Frank Charles BICKEL, Jr., Appellant,

v.

Barbara Alene BICKEL (Now Isaac), Appellee.

No. 2001–CA–002364–MR.

Court of Appeals of Kentucky.

Nov. 22, 2002.

John Kevin West, Traci H. Boyd, McCoy & West, Lexington, KY, for Appellant.

Fred E. Peters, Lexington, KY, for Appellee.

Before GUIDUGLI, HUDDLESTON, and KNOPF, Judges.

## OPINION

KNOPF, Judge.

Frank Charles Bickel appeals from a post-decree order of the Fayette Circuit Court which denied his motion to terminate his maintenance obligation to his former wife, Barbara Alene Bickel (now Isaac). He argues that the trial court improperly equated his retirement at age sixty-five with voluntary unemployment. While we agree that such a retirement should not be considered voluntary as a matter of law, we also find that Frank bore the burden of proving that his decision to retire at that time was objectively reasonable. Furthermore, we agree with the trial court that the evidence did not support Frank's motion to terminate maintenance, although some lesser relief may be appropriate. Hence, we affirm in part, reverse in part, and remand this action for further proceedings.

Frank and Barbara Bickel were married in 1957 and their marriage was dissolved by a decree of the Fayette Circuit Court on November 9, 1995. At that time, Frank was fifty-nine years old and had a gross income of $5,000.00 per month. Barbara was fifty-seven years old and had been employed outside of the home only occasionally during the marriage. The trial court ordered Frank to pay Barbara maintenance in the amount of $1,500.00 per month for her lifetime. In addition, the court awarded Barbara the marital residence and one-half of Frank's retirement account.

In August of 2001, Frank retired upon reaching sixty-five years of age. He filed a motion to terminate his maintenance obligation, stating that his income had been reduced to $2,866.00 per month. At the hearing on the motion, he testified that he had begun experiencing back problems and had recently had surgery to remove several skin cancers. However, he admitted that these conditions had not compelled his retirement. The trial court denied the motion to terminate maintenance. The court found that Frank's voluntary choice to retire and thus reduce his income did not make the terms of the previous maintenance award unconscionable. This appeal followed.

KRS 403.250(1) allows the provisions of any decree respecting maintenance to be modified "only upon a showing of changed circumstances so substantial and continuing as to make the terms unconscionable." "Unconscionable" means "manifestly unfair or inequitable."[1] Evidence for the movant must be compelling for the trial court to grant the relief requested; the policy of the statute is for relative stability. The determination of questions regarding maintenance is a matter which has traditionally been delegated

---

1. *Shraberg v. Shraberg*, Ky., 939 S.W.2d 330, 333 (1997); *Wilhoit v. Wilhoit*, Ky., 506 S.W.2d 511, 513 (1974).

to the sound and broad discretion of the trial court, and an appellate court will not disturb the trial court absent an abuse of discretion.[2] An appellate court is not authorized to substitute its own judgment for that of the trial court where the trial court's decision is supported by substantial evidence.[3]

We disagree with the trial court's statement equating Frank's retirement at age sixty-five with voluntary unemployment. It is well-recognized that a former spouse may not voluntarily reduce his or her income to avoid or reduce his or her support obligation.[4] However, retirement presents a different situation. In *Barbarine v. Barbarine*,[5] this Court held that a spouse's decision to accept early retirement, by itself, was not a change of circumstances which would render the original maintenance award unconscionable. Rather, a court must consider the reasonableness of the spouse's decision to accept early retirement.[6] Among other factors which are relevant to this determination, a trial court must consider the ability of both spouses to earn in the labor market, the age and health of the retiring spouse, the motives of the party for retiring, the timing of the retirement, the ability of the party to pay maintenance after retirement, the ability of the other spouse to provide for himself or herself, the reasonableness of the early retirement, the expectations of the parties and the opportunity of the dependent spouse to prepare to live on the reduced support.[7]

Unlike the maintenance obligor in *Barbarine*, Frank chose to retire at age sixty-five, when Social Security and most private retirement systems allow an individual to receive full benefits. Frank's employer did not require him to retire at that time, and his health problems, while significant, did not compel him to leave his employment. Even though his retirement was "voluntary" in this sense, Frank contends that he was entitled to retire after a lifetime of employment, and that he should not be obliged to continue working simply to support his former spouse. To a certain extent, we agree.

Recently, the Tennessee Supreme Court addressed this issue in *Bogan v. Bogan*.[8] The court noted the general rule that voluntary retirement cannot be considered, by itself, a changed circumstance sufficient to warrant a modification of spousal support. However, the Tennessee court noted that a different situation is presented when an obligor seeks bona fide retirement, as opposed to mere willful underemployment.

> Absent some tragedy or combination of unfortunate circumstances, retirement from further employment in the workforce is always voluntary and foreseeable because, at some point, every worker will eventually retire. Moreover, taken to its logical extreme, this standard would force an obligor to work until physically incapable of doing so merely to avoid the allegation that he or she was "voluntarily" avoiding spousal obligations. While the traditional standards regulating modification of support agreements should usually be applied to motivate parties to provide for such con-

2. *Perrine v. Christine,* Ky., 833 S.W.2d 825 (1992).

3. *Combs v. Combs,* Ky., 787 S.W.2d 260, 262 (1990).

4. *Gossett v. Gossett,* Ky.App., 32 S.W.3d 109 (2000).

5. Ky.App., 925 S.W.2d 831, 832 (1996).

6. *Id.* at 832.

7. *Id.* at 833.

8. 60 S.W.3d 721 (Tenn., 2001).

tingencies in their dissolution agreement, strict application of these standards in the retirement context can work unreasonable hardships. *Cf. Sifers v. Sifers,* 544 S.W.2d 269, 269–70 (Mo.Ct.App.1976) (denying modification when obligor "voluntarily" retired, even though he was 62, had a malignant kidney removed, and was unable to find employment in the industry in which he had worked all his life). At some point, parties must recognize that "[j]ust as a married couple may expect a reduction in income due to retirement, a divorced spouse cannot expect to receive the same high level of support after the supporting spouse retires." *In re Marriage of Reynolds,* 63 Cal.App.4th 1373, 74 Cal.Rptr.2d 636, 640 (1998).[9]

■ Consequently, the Tennessee Supreme Court held that when an obligor's retirement is objectively reasonable, such retirement constitutes a substantial and material change in circumstances so as to permit modification of the support obligation. Nonetheless, the court declined to hold that retirement at a specific age will be considered objectively reasonable *per se.* Although the court recognized that bona fide retirement after a lifetime spent in the labor force is somewhat of an entitlement, it stated that an obligor cannot merely utter the word "retirement" and expect an automatic finding of a substantial and material change in circumstances. Similarly, the mere foreseeability or voluntariness of a retirement at age sixty-five does not make the retirement objectively reasonable. Rather, the trial court should examine the totality of the circumstances

surrounding the retirement to ensure that it is objectively reasonable, the burden of proof being on the party seeking a modification of the award.[10]

■ We find that this approach set out in *Bogan* more fully comports with Kentucky law than the trial court's reasoning. In particular, *Bogan,* like *Barbarine,* directs a trial court to assess the reasonableness of a decision to retire in light of the totality of the circumstances, rather than simply a consideration of whether the decision to retire was voluntary. In contrast, the trial court simply found that. Frank had "voluntarily" retired because he left his employment at age sixty-five without any compelling reasons for doing so. Yet while we disagree with the trial court's analysis, we cannot say from the evidence that Frank's decision to retire was objectively reasonable as a matter of law.

At the hearing on Frank's motion to terminate maintenance, Frank testified that he had worked as a professor at the State University of New York at Oswego since shortly before the decree of dissolution was entered. He has Bachelor's and Master's degrees in music and the equivalent of a Doctorate in Education. He earned approximately $60,000.00 per year at the time of dissolution, and approximately $69,000.00 per year at the time of his retirement. In addition to noting his medical problems, Frank stated that he chose to retire at age sixty-five so he could enjoy his retirement while his health was still good, and so he could spend time with his ninety-one-year-old mother.

9. *Id.* at 728–29.

10. *Id.* at 729. *See also Misinonile v. Misinonile,* 35 Conn.App. 228, 645 A.2d 1024 (1994), holding that a spouse's decision to retire at age 68 was reasonable after considering all of the circumstances. The spouse stated that he

wanted to seek the less strenuous and demanding lifestyle offered by retirement, after working for thirty-three years with health problems. Furthermore, there was no evidence that the spouse retired for the purpose of avoiding or reducing his obligation.

Frank reported that he now had a total gross income from all sources of $2,800.00 per month. A portion of that amount is from a retirement annuity which fluctuates depending on the performance of the stock market. He has no plans to seek any additional employment. Frank resides in Oswego, New York in a house which his current wife inherited. There is no mortgage owed on the residence, and his current wife recently deeded him a one-half interest in the property for no consideration. Frank listed approximately $2,821.00 in monthly expenses, however some of these expenses included those incurred by his current wife. Frank's current wife is not employed and does not contribute to the household expenses.

Barbara is sixty-three years old and resides in the former marital residence, a condominium which she received in the dissolution judgment. The condominium is assessed at $98,000.00, and there is an existing mortgage of $75,000.00. However, she testified that her unit is not marketable due to the inability of her condominium association to provide needed repairs. She currently has a $12,260.00 outstanding repair bill to repair the siding on the exterior of her condominium.

Barbara testified that her total income from all sources (except maintenance) is $915.00 per month. As noted above, Barbara was awarded one-half of Frank's retirement account. The payments from that account, like Frank's payments, vary depending upon the stock market. She elected to receive payments from the retirement account when she was fifty-seven, resulting in a lower monthly payment than would have been available had she waited until age sixty-five to begin receiving payments.

Barbara has a high school diploma, and she occasionally worked during the marriage for relatives. She has not sought employment since the divorce, citing her lack of skills, work experience, and personal confidence. She stated that she had not sought to obtain any additional education or training due to her lack of ability to afford the tuition.

Barbara reported expenses of $2,124.48 per month. She stated that she has gone without health insurance due to her inability to afford it. She also stated that she provides some assistance to her adult children. Her adult son resided with her for five and a half years after the divorce, and her daughter resided there for about sixteen months. Neither contributed to the household expenses. She had recently paid off $5,000.00 in credit card debt, using funds which she had saved since the divorce.

■ Despite Frank's criticisms of Barbara's financial decisions, there was no evidence that her income, employability, or expenses have changed since the time of the original award. Most notably, there was no evidence that Barbara has sufficient property and income to provide for her reasonable needs or that she is able to support herself at a standard of living similar to that which she enjoyed during the marriage. The only significant change in circumstances concerns Frank's ability to pay maintenance following his retirement. However, Frank's post-retirement income, while significantly reduced, is still greater than Barbara's. Even if we found that Frank's decision to retire was objectively reasonable, there was no other evidence to warrant a termination of the entire maintenance award. Thus, the trial court did not err in denying Frank's motion to terminate maintenance.

■ Nevertheless, KRS 403.250 expressly speaks to modification of maintenance, without distinguishing between ter-

mination and reduction of an existing award. Thus, a motion to terminate maintenance necessarily encompasses all lesser relief, including a reduction or modification of an open maintenance award. Because the trial court applied an incorrect standard in finding that Frank was voluntarily unemployed, we cannot determine if the maintenance award is now unconscionable due to a change in Frank's circumstances. Rather, this issue is contingent upon the trial court's findings concerning the reasonableness of Frank's decision to retire. This is a factual matter which is within the province of the trial court to decide. Therefore, we must remand this action for a further hearing and proceedings on this question.

Accordingly, the judgment of the Fayette Circuit Court is affirmed in part, reversed in part, and this case is remanded for further proceedings as set out in this opinion.

ALL CONCUR.