Bruce A. DAUNHAUER, Appellant,

v.

Elaine DAUNHAUER, Appellee.

No. 2008–CA–000378–MR.

Court of Appeals of Kentucky.

Sept. 4, 2009.

Rocco J. Celebrezze, Jennifer S. Begley, Louisville, KY, for appellant.

Douglas E. Miller, Radcliff, KY, for appellee.

Before ACREE and NICKELL, Judges; KNOPF,[1] Senior Judge.

## OPINION

ACREE, Judge.

Bruce Daunhauer appeals from an order of the Jefferson Family Court denying his motion to terminate his maintenance obligation created by the order dissolving his marriage to his former wife, Elaine Daunhauer. The evidence shows that Elaine, having received rehabilitative maintenance for more than twenty years, is no longer dependent upon that maintenance to meet her needs. Her ability to meet her financial needs with her own resources constitutes a change in the parties' circumstances so substantial and continuing as to render the continuation of the maintenance obligation unconscionable. Therefore, we reverse.

The parties married in California in 1966 when Bruce was 27 and Elaine was 21. They divorced in 1987, after twenty-one years of marriage, when Bruce was 48 and Elaine 42. Income statements (Forms W–2) submitted by Elaine for the year preceding the filing of the petition showed Bruce earned $22,248.47 from his dentistry practice. Elaine earned $8,853.87 as a secretary at the University of Louisville Department of Family Practice, and $1,163.75 from a second Louisville employer, Little Peoples' Workshop, for a total income of $10,017.62.

Before the decree was entered, Elaine relocated to California.[2] Prior to her leaving, the parties entered into a handwritten agreement addressing a variety of issues, including maintenance. That agreement states in pertinent part:

Mr. D pays:
Maintenance of $400 mo. until June 30, 1987
Child support of $400 mo. until June 30, 1987
Effective July 1, 1987 —maint. of $400 mo.
—c/s of $200 mo.
Maint. shall be reviewable for either party Oct. 1, 1989.

The decree states "that the handwritten agreement is controlling." Based on that agreement, the trial court included the following language regarding maintenance:

[Bruce] shall pay to [Elaine] the sum of $400.00 per month as maintenance until her death or remarriage, whichever shall first occur. Maintenance shall be reviewable at the request of either party after October 1, 1989.

By 1989, Elaine had obtained employment as a medical assistant at the University of California at Irvine where she

---

1. Senior Judge William L. Knopf sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statute (KRS) 21.580.

2. The record indicates that, before marrying Bruce, Elaine resided in California with her family and that her mother resided there until her death in 1999. During the parties' separation, Elaine returned to California and remained there after the divorce was final.

earned $25,571.52 that year.[3] Bruce's income had increased as well, but not as dramatically, to $35,874.24. In February 1990, upon Bruce's motion, the trial court reduced the maintenance award to $200.00 per month.

In 1995, Bruce again moved for a reduction in maintenance. He had remarried and had a stepdaughter. Though his annual income had increased to $43,467.94, his expenses had increased, too. Elaine's income had also increased to $28,163.02. The trial court denied Bruce's motion, however, finding the change in circumstances insufficient to justify reduction in maintenance.

In 2006, at age 66, Bruce broke both his hip and his right arm. His injuries necessitated a hip replacement and physical therapy. Consequently, he made the decision to sell his single-practitioner dental practice and retire. Bruce filed a motion to terminate spousal maintenance to Elaine. The family court found Bruce's retirement objectively reasonable but denied Bruce's motion because the parties' circumstances had not sufficiently changed. This appeal followed.

■ "The determination of questions regarding maintenance is a matter which has traditionally been delegated to the sound and broad discretion of the trial court, and an appellate court will not disturb the trial court absent an abuse of discretion." *Barbarine v. Barbarine,* 925 S.W.2d 831, 832 (Ky.App.1996). This Court "is not authorized to substitute its own judgment for that of the trial court where the trial court's decision is supported by substantial evidence." *Id.*

■ Our analysis of the family court's decision in this case begins with the original maintenance award. "Maintenance awards are governed by KRS 403.200 ... [which] seeks to enable the unemployable spouse to acquire the skills necessary to support himself or herself in the current workforce so that he or she does not rely upon the maintenance of the working spouse indefinitely." *Gripshover v. Gripshover,* 246 S.W.3d 460, 469 (Ky.2008). The goal of a maintenance award is to facilitate one's transition from dependence upon her former spouse to independence. This is consistent with another goal of the dissolution process which is to sever all ties as much as possible as soon as possible. *Light v. Light,* 599 S.W.2d 476, 479 (Ky.App.1980)("Since ongoing maintenance ties the parties together, it should be avoided except as circumstances of need and fairness demand.").

The original maintenance award here, while not specifically denominated as rehabilitative, can only be viewed as such. Our Supreme Court said that KRS 403.200 expresses "the statutory goal of rehabilitation[,]" *Gripshover,* 246 S.W.3d at 470, and referred to rehabilitation as the "policy" behind an award of maintenance. *Id.,* citing *Powell v. Powell,* 107 S.W.3d 222, 224 (Ky.2003). Additionally, in this case, the parties' handwritten settlement agreement did not prohibit modification but instead presumed it. The most appropriate reason for such modification, and that anticipated by the policy behind KRS 403.200, is the ability of Elaine, through rehabilitation, to live independently of maintenance.

However, Elaine argues that in some cases, such as *Gripshover,* maintenance is never terminated. While it is true that maintenance awards sometimes last indefinitely, the case before us is not such a case

---

**3.** Elaine also holds a degree in physical education; however, our examination of the record did not reveal whether that degree was

held at the time of the divorce or obtained thereafter.

as *Gripshover*. All that this case has in common with *Gripshover* is that the marriage in both cases would be considered one of long duration by today's standards. Even then, the Gripshovers were married 36 years while the Daunhauers were married a little more than half that long at 21 years. In *Gripshover*, the divorce occurred shortly before the wife reached retirement age and therefore "the prospects for [Mrs. Gripshover's] self-sufficiency appear[ed] dismal[.]" *Id.*, quoting *Powell* at 224. Where such prospects are "dismal," "the statutory goal of rehabilitation will not always be attainable[.]" *Id.* at 470. That was not the future Elaine faced when she and Bruce divorced. On the contrary, Elaine was sufficiently young and educated to achieve financial self-support. The language of the handwritten settlement agreement and the decree are evidence that the parties and the family court recognized that the probability of Elaine's rehabilitation was high. There is nothing in the record to support a contrary view.

In this case, KRS 403.250 entitles Bruce to have his maintenance obligation modified or terminated if he demonstrates changed circumstances that render his obligation unconscionable. And while "[t]he policy of the statute [KRS 403.250] is for relative stability[,]" *Barbarine*, 925 S.W.2d at 832, stability does not mean or require permanence.

> The changed circumstances requirement incorporates an unconscionability test, but there is no need to prove unfairness in the agreement's making. Instead, the party seeking modification must show that circumstances have altered so that in the current situation it would be manifestly unfair to require continued payment.

16 Louise Everett Graham & James E. Keller, *Kentucky Practice–Domestic Relations Law §* 16:25 (3d ed. 2008); *see also,*

*Bickel v. Bickel*, 95 S.W.3d 925, 927 (Ky.App.2002)(" 'Unconscionable' means 'manifestly unfair or inequitable.' ").

The policy underlying KRS 403.200, rehabilitation, and that underlying KRS 403.250, relative stability, are not at odds. When one previously dependent upon a former spouse achieves self-sufficiency, both policies of rehabilitation and stability are satisfied. With these policies in mind, we consider the family court's order denying Bruce's motion to terminate his maintenance obligation and the evidence upon which it is based.

■ As the order notes, the primary changes in circumstance that Bruce addressed in his motion resulted from his voluntary retirement. Therefore, the first issue the family court had to address was whether Bruce's voluntary retirement was objectively reasonable. In general,

> the trial court should examine the totality of the circumstances surrounding the retirement to ensure that it is objectively reasonable, the burden of proof being on the party seeking a modification of the award.

*Bickel*, 95 S.W.3d at 929. If voluntary retirement is not found to have been objectively reasonable, then the changed circumstances resulting from that retirement are not taken into account. In other words, retirement that is not objectively reasonable should be treated comparably to voluntary underemployment. On the other hand, if voluntary retirement is objectively reasonable, the changes in circumstances resulting from the retirement must then be considered by the court. *See Bickel* at 930 ("if . . . decision to retire was objectively reasonable, there [still must be] evidence to warrant termination of the entire maintenance award.").

Here, the family court found that Bruce met his burden of proof and as a result

determined that his retirement was objectively reasonable. Elaine did not appeal this ruling. The changes in Bruce's circumstances resulting from his retirement, also being objectively reasonable, must therefore be considered. The motion itself necessitates consideration of the changes in Elaine's circumstances as well. Therefore, we examine the family court's consideration of those changes.

More than twenty years ago, Bruce and Elaine owned a home together. Today, each has a new partner with whom they separately own and share homes. Bruce and his current wife live in a house in Louisville they bought together for $218,000. They have equity in their home of approximately $133,700. Elaine and a gentleman friend reside together in a home they purchased in 1999 for $245,000, with equity of approximately $47,000.[4] Their home is located in Garden Grove, California, a suburb of Los Angeles.

Elaine also keeps an apartment in her own name located in the adjoining Los Angeles suburb of Los Alamitos. She sublets the apartment to her brother, who, lacking the financial resources to obtain the apartment, was dependent upon Elaine's creditworthiness to secure the residence for his own use. He pays Elaine's monthly rent there of $1,100.

As one would expect, there have been changes in Bruce's and Elaine's incomes as well. Though Bruce's income had risen higher since its peak at $22,248 during the marriage, he earned only $27,000 in 2006, the last year he practiced dentistry.[5] During the same period, Elaine's income rose from $10,018 to $46,378. At the time of the 2007 hearing, Bruce's gross monthly income (from retirement) was $3,019 yielding a net income of $2,679.[6] Elaine's gross monthly income (from her employment at the University of California at Irvine)[7] of $4,171 was greater than Bruce's, and her net income of $2,829 was also greater than Bruce's net income.

Bruce presented evidence that his monthly expenses exceeded his income by almost $1,500. However, as the parties separately note, we do not know how the income and expenses of Bruce's current spouse (who is battling cancer) impact his ability to offset that deficit, if at all. Elaine's monthly expenses are $2,969.30, or about $140 more than her net income. She testified that she needed to continue receiving maintenance payments of $200 to be able to buy groceries. But other portions of her testimony indicate otherwise.

Elaine testified that her expenses include $303 per month she spends to rent a storage unit for the personal property that she and her brother inherited when their mother passed away in 1999. She indicated that she has avoided distributing or otherwise dispensing of the property because of the emotional issues that doing so

---

4. Elaine testified that the current mortgage balance was $198,000.

5. The 2004 to 2006 federal tax returns Bruce jointly filed with his current wife showed additional income from sources unrelated to Bruce's practice but apparently resulting from his wife's activities as a property manager. We take the $27,000 figure from the family court's order.

6. Bruce could have increased his monthly retirement plan payment, but he testified that he relied on his financial planner to set the amount at a monthly rate that would assure he would not exhaust his resources prematurely. This, too, must be considered objectively reasonable.

7. While the order indicates Elaine had been employed in her current position at UC–Irvine for only four years, Elaine's testimony and the record indicate she has been continuously employed at the university in different positions since at least 1989.

would summon. In effect, for nearly a decade, Bruce's maintenance payment has helped enable Elaine to avoid the emotions she must eventually face in dealing with her mother's estate. However, no matter how understanding this Court wishes to be, we cannot characterize this $303 monthly expense as necessary.

During their marriage, Elaine and Bruce had only one modest retirement plan, an individual retirement account owned by Bruce valued at $9,500. The court divided the account equally between the parties, and Elaine rolled her share into a separate account. Since that time, each party obviously has taken a more serious view of retirement saving. As of the hearing date on Bruce's motion, the parties' relative retirement assets were as follows:

| Bruce | Elaine |
|---|---|
| $314,083.39 (annuity) | $98,761.38 (UC Retirement Savings Program) |
| $ 76,406.23 (3 IRAs) | $49,951.44 (IRA) |

By their nature, retirement programs are funded from resources which the contributor deems more necessary for future needs than for current needs. The relative sacrifices that either Bruce or Elaine chose to make, if any, in order to establish these retirement accounts are not a part of the record. We do know, however, that the parties' separate retirement accounts were equal at the time of the divorce and, beyond that date, their respective accounts were funded from assets they independently acquired thereafter.

Similarly, since their divorce, each party has bettered his or her circumstances through their own independent efforts to increase their personal income and other assets. Nevertheless, today there is a disparity in the assets of Bruce on the one hand and Elaine on the other.

In considering this evidence, the family court placed special emphasis on three factors. First, the court noted that "[t]here is still a considerable disparity in income between the parties." [8] Second, "the maintenance payment itself is relatively small." Third, the court relied upon the general knowledge and prior ruling of that court that "[t]he standard of living in California is much higher than that in Kentucky." Given the evidence of this case, such emphasis on these factors is misplaced.

When the parties divorced in 1987, they provided for a family of four on total income of $32,266.09, two-thirds of which Bruce earned. According to the United States Department of Labor, Bureau of Labor Statistics' Consumer Price Index (CPI) Inflation Calculator,[9] that 1987 income equates to $61,263.82 in today's dollars. Elaine's own current salary approaches that figure. In view of the fact that she benefits financially from sharing household expenses with a gentleman friend and that her children are no longer dependents, it is clear that her current standard of living meets or exceeds that enjoyed during her marriage to Bruce. Under such circumstances, was it appro-

8. We note that the family court's order, on its face, shows that Elaine's current income actually exceeds Bruce's individual income. This statement in the order can only be justified if one presumes Bruce could increase his retirement *distributions* or if one includes all sources of income shown on the joint income tax return Bruce filed with his spouse, including her investments and income as a property manager.

9. This calculator is available at *http://www.bls.gov/data/inflation_calculator.htm.* Although caution is called for in deciding to take judicial notice, particularly of information on the internet, the CPI Inflation Calculator falls into the second category of Kentucky Rules of Evidence (KRE) 201, as indisputable facts derived from a source the accuracy of which cannot reasonably be questioned. *Polley v. Allen,* 132 S.W.3d 223, 225–26, 225 fn. 1 (Ky.App.2004).

priate for the family court to place emphasis on the disparity of the parties' income and assets? For the following reasons, we believe not.

The question we ask when considering the family court's first factor is whether the parties' independent, post-decree accumulations of assets or increases in income should be considered in determining whether to modify or terminate maintenance. We believe the answer is as follows: If Elaine has achieved self-sufficiency through rehabilitation as contemplated by KRS 403.200,[10] post-decree increases in Bruce's income or assets are irrelevant. Stated another way, the fact that Bruce has sufficient assets or income to continue maintenance payments is no reason to require payment to one who no longer needs it. Only if Elaine has failed to achieve self-sufficiency do the current assets and income of Bruce and Elaine become relevant to determine the proper maintenance amount. We reach this conclusion based on our analysis of *Roberts v. Roberts,* 744 S.W.2d 433, 436 (Ky.App.1988), and the cases upon which it is based.

In *Roberts,* we reaffirmed that in determining the *initial* award of maintenance under KRS 403.200, analysis of "the amount of the husband's estate and his ability to pay [maintenance] encompassed [consideration of] *all* of the husband's estate irrespective of the source." *Id.* (citation and internal quotation marks omitted). However, we alluded to a different approach when the issue was not the initial award but whether to modify that initial award under KRS 403.250. The specific post-decree asset at issue in *Roberts* was an inheritance Mr. Roberts received after his second wife died.

[T]he fact that Mr. Roberts' total estate should have been considered at the time the original maintenance award was set *would not necessarily require* us to conclude that the inheritance he received from his second wife four years after he and Mrs. Roberts divorced should be considered in an appraisal of his ability to pay increased maintenance under KRS 403.250.

*Id.* (emphasis supplied). In determining that Mr. Roberts' post-decree increases should be considered, we relied on an analogous situation involving child support described in *Daniels v. Daniels,* 726 S.W.2d 705 (Ky.App.1986). In *Daniels,* we said it was appropriate to include a child-support obligor's post-decree inheritance when considering whether changed circumstances were sufficient to justify an increase in child support. However, implicit in both *Daniels* and *Roberts* was the fact that the payment recipients were still dependent upon financial support from the obligor—a prerequisite to the consideration of post-decree assets and income.

In *Roberts,* we expressed our certain desire not to "foster an atmosphere in which a long-parted spouse may . . . share the wealth with a former spouse who has . . . bettered his position in life through his own hard work and efforts." *Roberts,* 744 S.W.2d at 436. Access to any portion of the obligor spouse's post-decree accumulation of wealth is limited to "the spouse who is [first] *determined to be in need* of maintenance[.]" *Id.* (emphasis supplied). And while a dependent former spouse "has some expectation that he or she will be supported according to the standard of living established during the marriage[,]" we have never said a former spouse is entitled to support according to a standard

---

**10.** That is, achieving more than the ability to "eke out a living." *Combs v. Combs,* 622 S.W.2d 679, 680 (Ky.App.1981).

of living established by the obligor spouse *after* the marriage. *See Roberts* at 436–37 ("the mere showing that Mr. Roberts received an inheritance would probably not alone be enough to warrant a change in the maintenance award[.]").

The parties' retirement savings, incomes and other assets, independently acquired or enhanced during the two decades since their divorce, or even their disparity, should have had no impact on the family court's analysis of the changes in the parties' circumstances. The more significant and fundamental change that has occurred is Elaine's self-sufficiency. The original maintenance award was premised upon the finding that Elaine was not capable of self-sufficiency immediately after the divorce. Since that time, through two decades of employment, education, and investment, Elaine has demonstrated her achievement of the goals of KRS 403.200 and KRS 403.250—rehabilitation, self-sufficiency, and stability. Bruce has dutifully supplemented Elaine's income for a longer span of time than their marriage lasted. The record clearly shows that Elaine no longer needs the financial support of her ex-husband, and it is time for the maintenance obligation to end. To allow it to continue would not be rehabilitative, but punitive and, therefore, unfair and inequitable.

The family court's second factor, that the maintenance amount was "relatively small," is similarly irrelevant. Having achieved self-sufficiency through rehabilitation, Elaine did not *need* further support from Bruce in any amount, large or small. Furthermore, the maintenance amount is smaller, i.e., less consequential, relative to Elaine's income than to Bruce's income.[11]

Finally, the higher cost of living in California is a deceptive concept but meaningless in this context. The higher cost to live in California is offset by a wage Elaine earns in that very economy. She has presented no evidence that her California wage is not proportionately higher than she could earn in this state for the same work. A higher cost-of-living differential may be significant when the maintenance recipient is entirely or even largely dependent upon the maintenance obligor to meet the demands of the more expensive economy. But this was never Elaine's situation. She elected to enter the California workforce and has remained in it for two decades. Her California wage is commensurate with the demands of the California cost of living. While earning a living in California she has not only met her needs, she has attained a credit rating that allowed her to assist her brother with his housing and has had sufficient discretionary income to maintain an unnecessary expense of $303 per month since becoming responsible for the assets of her mother's estate.

In view of the foregoing, we conclude that the family court's implicit holding that Elaine is not self-sufficient and remains in need of rehabilitative maintenance is not supported by substantial evidence; continuing Bruce's maintenance obligation under such circumstances constitutes an abuse of discretion. The fundamental change in circumstance here is that Elaine has achieved self-sufficiency through rehabilitation. Additionally, she has adequately prepared for her retirement by twenty years of contributions both to an IRA and to her employer-sponsored retirement sav-

11. The $200 maintenance is 6.6% of Bruce's gross income ($200/$3019) but only 4.8% of Elaine's ($200/$4171). It is 7.5% of Bruce's net income ($200/$2679) and only 7.1 % of Elaine's ($200/$2829).

ings program, to say nothing of the social security benefits that she is or will soon be eligible to access.

For the foregoing reasons, the Jefferson Family Court's order denying Bruce's motion to terminate maintenance is reversed and remanded for entry of an order consistent with this opinion.

ALL CONCUR.