RENDERED: OCTOBER 2, 2020; 10:00 A.M.
TO BE PUBLISHED

**OPINION OF SEPTEMBER 25, 2020, WITHDRAWN**

# Commonwealth of Kentucky
# Court of Appeals

NO. 2019-CA-1116-MR

MAUREEN O'MEARA HOLLAND                                        APPELLANT

APPEAL FROM JEFFERSON FAMILY COURT
v.            HONORABLE LAUREN ADAMS OGDEN, JUDGE
ACTION NO. 15-CI-502475

JOHN ELKAN HERZFELD, III                                        APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CLAYTON, CHIEF JUDGE; TAYLOR AND L. THOMPSON,
JUDGES.

CLAYTON, CHIEF JUDGE: Maureen O'Meara Holland ("Holly") appeals from

two orders of the Jefferson Family Court denying her motion to modify or

terminate her maintenance obligation to her former husband, John Elkan Herzfeld,

III ("John"). Upon review of the record and applicable law, we affirm the decision of the family court.

BACKGROUND

Holly and John were married in 1984. The marriage was dissolved by a decree entered on April 6, 2016. During the course of the marriage, Holly was employed as a writer, book editor, and consultant. In 2011, she started teaching Pilates out of her home. At the time of the divorce, her annual income was $63,630. John was employed as a full-time teacher until 2012, when he was diagnosed with congestive heart failure. He worked as a substitute teacher until 2015, when he was diagnosed with Parkinson's disease and began receiving Social Security disability benefits. In 2015, he received approximately $30,000 in disability benefits and $15,216 from part-time employment. His total income that year was $49,879.

On March 28, 2016, Holly and John entered into a property settlement agreement ("PSA") that was subsequently incorporated into the final decree of dissolution. Under the terms of the PSA, Holly retained a vehicle, bank accounts with balances totaling $55,000, life insurance policies, and various small business proprietorships. John retained a vehicle, bank accounts totaling $49,000, individual retirement accounts, various stocks and mutual funds, personal property, and art. The PSA equally divided various qualified retirement assets, personal

property, and a Janus account with a total value of $27,456. Holly retained the

marital residence and obtained a mortgage which enabled her to transfer $135,000

to John for his share of the property. John invested this sum. Holly used her share

of the mortgage proceeds to open a Pilates studio.

With respect to the issue of maintenance, the PSA states:

> Holly and John acknowledge that each of them are able-bodied persons capable of working and contributing to their own support, or have access to funds for his or her support. John has been determined to be partially disabled and entitled to SSDI and, for some period of time, disability payment from a private disability plan. Additionally, he acknowledges his ability to work (most recently working full time) at least part time and contribute to his support. Nonetheless, Holly acknowledges John meets the statutory requirements for maintenance, and the parties agree as follows: Holly will pay John maintenance in the amount of $800 per month until such time that John is able to draw full Social Security Retirement benefits at age 66½ years of age. The maintenance may be modifiable during the fixed term as provided by KRS 403.250, only in the event of changed circumstances so substantial and continuing as to make the terms of the award unconscionable, which may include (these possibilities are NOT exclusive) significant changes in either party's income or assets. The term of the maintenance may not be extended and shall terminate in the event of the death of either party, John attaining age 66 and ½, or John's remarriage.

In 2017, John was able to return to full-time employment as a grant

writer, earning $44,823. His investment income that year was $10,276. By the fall

of 2018, he had resumed full-time teaching with an annualized income of $50,000

and he stopped receiving disability benefits. Holly's Pilates studio has been financially successful, and her annual income following the divorce ranged from $70,000 to $75,000.

On May 1, 2018, Holly filed a motion seeking modification of her maintenance obligation to John with an accompanying affidavit stating she believed John's disability was substantially, if not completely, resolved, and he was consequently capable of earning sufficient income to meet his reasonable needs. Both parties attended mediation as prescribed by the PSA but were unable to reach an agreement.

The family court conducted an evidentiary hearing in January 2019, at which Holly placed into evidence John's 2017 tax returns which showed that, in addition to his salary, he had earned $8,533 in interest and dividend income and realized $1,743 in capital gains. He reduced his total income that year from $74,338 to an adjusted gross income of $65,838 by contributing $6,500 to an IRA. John testified that he lives in a 900-square-foot apartment which is substantially smaller than the marital residence and has curtailed his lifestyle because of uncertainty about his future economic circumstances. He also testified about his health, explaining that he suffers from heart failure, Parkinson's disease, bipolar disorder, and hearing loss.

The family court found that although Holly and John had both experienced a substantial and continuing change in circumstances since entry of their PSA, their respective incomes remained disparate. It denied Holly's motion to modify the maintenance obligations in the PSA because the current maintenance award was not "manifestly unfair or inequitable."

On April 8, 2019, Holly timely filed motions requesting the family court to make additional findings of fact, amend the findings of fact, and alter and amend its earlier order, arguing that it had failed to consider John's additional income from interest, dividends, and capital gains. John timely filed an objection to these motions on May 1, 2019, pointing out that his current employment at a higher salary was recent and by no means guaranteed to continue in light of his ongoing and serious health problems. He also contended that the sale of assets which generated capital gains in the amount of $1,743 in 2017 could not be characterized as continuing income.

On June 13, 2019, the family court entered an order amending its findings of fact to acknowledge that John was likely to meet his monthly living expenses with his current salary and investment income. It reiterated, however, that the terms of the PSA awarding him maintenance were not unconscionable and denied Holly's motion to modify or terminate her maintenance obligation. This appeal by Holly followed.

ANALYSIS

a. Standard of Review

Holly and John's PSA incorporated the statutory standard for modification of maintenance, which states in pertinent part that "the provisions of any decree respecting maintenance may be modified only upon a showing of changed circumstances so substantial and continuing as to make the terms unconscionable." Kentucky Revised Statutes (KRS) 403.250(1). "Maintenance becomes unconscionable if it is manifestly unfair or inequitable. To determine whether the circumstances have changed, we compare the parties' current circumstances to those at the time the court's separation decree was entered." *Tudor v. Tudor*, 399 S.W.3d 791, 793 (Ky. App. 2013) (internal quotation marks and citations omitted).

A family court's refusal to modify maintenance is reviewed for abuse of discretion. *Id.* "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999) (citations omitted). "An appellate court is not authorized to substitute its own judgment for that of the trial court where the trial court's decision is supported by substantial evidence." *Bickel v. Bickel*, 95 S.W.3d 925, 928 (Ky. App. 2002) (citation omitted).

b.  Discussion

Holly argues that the family court abused its discretion when it refused to modify or terminate her maintenance obligation when, according to its own findings of fact, John was capable of providing for his own reasonable living expenses through his employment and investment income.

In its order of March 29, 2019, the family court found that both John and Holly had experienced an increase in their incomes.  John had returned to full-time employment, earning $50,000 per year, or $35,000 more than at the time of the PSA, and was no longer receiving disability benefits.  Holly earns approximately $75,000 per year from her Pilates business, approximately $12,000 more than she earned at the time of the PSA.  The court concluded, however, that the parties' incomes remained disparate because John could not meet his reasonable monthly living expenses of $3,778 without drawing on the substantial savings he received from the PSA.  It also noted that John is sixty-two years of age and his medical conditions, while currently stable, will ultimately deteriorate.  The family court calculated that the current maintenance payment results in an adjusted income of $65,400 for Holly and $59,600 for John.  It concluded that the current maintenance award was not unconscionable under KRS 403.250.

In its subsequent order addressing Holly's motions for additional findings and/or to alter, amend, or vacate the previous order, the family court

addressed Holly's contention that John's investment income was sufficient to meet the shortfall between his current salary and monthly living expenses. It agreed John could meet his monthly expenses in this manner but emphasized that the question was not whether his current circumstances would entitle him to an award of maintenance. Rather, the question was whether the parties' agreement for Holly to pay John maintenance had become unconscionable. The family court concluded that it had not.

Holly argues that the family court abused its discretion because it failed to consider the statutory principles governing an initial award of maintenance. KRS 403.200(1) provides in pertinent part that the court may grant maintenance to either spouse only if it finds that the spouse seeking maintenance "(a) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and (b) Is unable to support himself through appropriate employment[.]" KRS 403.200(1). Holly argues that if this standard was applied to John's current financial situation, an award of maintenance would not be justified because John can provide for his reasonable needs and the disparity between his and Holly's assets is modest.

But, in the PSA, Holly agreed to pay maintenance under the financial facts as they were at that time. She also expressly agreed that any modification of that maintenance would be governed by KRS 403.250, not by KRS 403.200(1).

Had Holly wished any future modification of maintenance to be governed by the latter standard, she should have sought to incorporate it into the PSA. The family court applied the correct standard, as mandated by the PSA, of changed circumstances and unconscionability under KRS 403.250 in assessing whether a modification of maintenance was warranted. Holly's assertion that John would not currently be entitled to maintenance under KRS 403.200(1) does not render his continued receipt of maintenance unconscionable.

## CONCLUSION

The family court applied the correct legal standard in deciding whether to terminate or modify maintenance. Its decision is supported by substantial evidence in the record that the incomes of the parties remain disparate and that John's income is contingent upon his progressive medical conditions remaining stable. For the foregoing reasons, its orders are affirmed.

ALL CONCUR.

BRIEF FOR APPELLANT:               BRIEF FOR APPELLEE:

B. Mark Mulloy                     Christopher Harrell
Louisville, Kentucky               Louisville, Kentucky