RENDERED: FEBRUARY 9, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0102-MR

LOYD JEFFREY BOWERS                                                    APPELLANT

v.                        APPEAL FROM CAMPBELL CIRCUIT COURT
                                     FAMILY DIVISION
                   HONORABLE RICHARD A. WOESTE, JUDGE
                              ACTION NO. 20-CI-00812

BETHANY A. BOWERS                                                       APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: ACREE, GOODWINE, AND JONES, JUDGES.

GOODWINE, JUDGE: Loyd Jeffrey Bowers (Husband) appeals from the

Campbell Family Court's findings of fact, conclusions of law, and orders entered

in the dissolution of his marriage to Bethany A. Bowers, now Sabota (Wife).

Husband argues that the family court abused its discretion in awarding Wife

maintenance, attorney fees, and only 12% of the marital debt.[1]  After careful review, finding no error, we affirm.

## BACKGROUND

Husband and Wife were married on September 6, 2003, in West Chester, Ohio.  They did not have any minor children.  Wife petitioned the family court for the dissolution of their marriage on October 28, 2020.  They separated on December 29, 2020.  At the time of the final hearing in June 2022, Husband was sixty-seven years old, and Wife was fifty-four.  Throughout the marriage, Husband was the higher-earning spouse.  At the time of the final hearing, Husband was employed as the Vice President of Western Operations and Business Management for PermaFix and had been employed there for 5.5 years.

Husband's gross annual salary was $230,000, and his average net pay was $14,579 per month.  Husband was eligible to receive annual bonuses based on company performance.  In 2021, Husband received bonuses totaling approximately $40,000.  Husband testified he used his bonuses to pay off a small business loan of about $25,000.  Husband is eligible to receive Social Security benefits but has elected not to draw Social Security.

---

[1] Appellant's Brief at 14.  Once the family court determined that the only marital debt was the parties' tax debt and costs associated therewith, the family court awarded Wife 15% of the marital debt, not 12%.  Record (R.) at 274.

Wife previously worked in real estate, but due to health-related issues, left that position. Wife was not employed from October 2020 until October 2021. In October 2021, Wife began working at a children's hospital earning $21.67 per hour. She voluntarily quit her job in early January 2022 and remained unemployed for several months. Subsequently, Wife obtained a job making $20 per hour, working 40 hours per week remotely for a temporary service doing administrative work. At the time of the June 2022 trial, Wife testified that her gross annual income was $41,600.

Wife alleged that she needed $5,000 per month in maintenance from Husband to meet her reasonable needs. When added to her earning potential of $3,756 per month[2] her total monthly budget would be approximately $8,756 per month. Per Wife's budget that she filed with her Final Disclosure, she testified she needs $5,379 per month to meet her expenses. The family court found this to be a significant reduction from her prior budget of $9,180 which she utilized for the temporary maintenance reduction hearing. The family court found Wife's gross earning capacity to be roughly $3,500 per month. Her net is $3,024 per month. Wife perceived an estimated shortfall of $2,347 per month to meet her expenses.

On May 25, 2021, the family court ordered Husband to pay Wife $7,500 per month as temporary spousal maintenance. On July 28, 2021, Husband

---

[2] This total was calculated using an hourly rate of $21.67 per hour, 40 hours per week.

filed a motion to reduce his monthly maintenance obligation. Husband paid Wife $7,500 per month as temporary spousal maintenance from May through September 2021; in October 2021, he paid only $4,800; in November 2021 he paid only $1,400; and in December 2021 he paid only $2,000. Husband testified that he believed he could contribute $1,500 to $2,500 per month to spousal maintenance for Wife. On March 4, 2022, the family court retroactively modified Husband's temporary maintenance obligation to $2,500 per month effective October 2021.

During the pendency of the dissolution proceedings, Husband relocated to Walnut Creek, California, for work. He testified his income did increase from $194,000 to $230,000 because of the move; however, according to Husband, that increase was only to account for the cost-of-living disparity between living in the tri-state area versus living in California. The family court reviewed Husband's 2022 paystubs and found his average net pay was $14,579 per month.

Wife continued to reside in the parties' marital residence in Newport, Kentucky, until it was ordered sold on March 25, 2021. The net proceeds from the sale were equally divided, and each party received approximately $62,000. After the marital residence was sold, Wife rented an apartment for approximately $3,000 per month. When Husband ceased paying the full amount of his temporary maintenance obligation in October 2021, Wife utilized half of the sale proceeds to

pay rent and cover her living expenses. When the lease expired on Wife's rental in May 2022, she moved in with her parents.

Husband utilized his half of the sale proceeds to make a down payment on a condominium in Walnut Creek, California. Before purchasing the condominium, Husband lived in two separate rental properties in California. Husband's monthly housing payment after purchasing the condominium was $3,781, which was a significant increase from what he paid in rent. The family court found that as of the date of trial, Husband had $45,000 in equity in his California condominium.

The family court found the parties' marital assets included real estate located in Newport, Kentucky, and Walnut Creek, California. The family court awarded Husband the $45,000 equity in the California condominium, finding that he used half of the proceeds from the sale of the Newport, Kentucky, property, and a loan he took out from his 401K to assist with the down payment for the Walnut Creek, California condominium.

Wife had a 2017 Mercedes GLA with a value of $29,024 and with debt attached of $25,846. Husband had a 2018 Audi Q3 with a value of $22,500 and with a debt attached of $22,966.28. Husband had a $114,161.29 401K Plan. Husband took a loan out on the 401K Plan. The parties agreed that the 401K should be divided equally as if the loan had not been taken out by Husband.

Husband also owned 1,400 shares of stock with an approximate value of $18,000. The parties agreed to equally divide said stock. The parties agreed that each would retain any property currently in their possession.

As far as debts, Wife testified that she had the following credit card debt: Macy's, $700; Ann Taylor, $1,300; J Crew, $1,300; and Banana Republic, $2,304.25. Husband testified he had debt as follows: Best Egg, $5,866; American Express, $28,000; Key Business, $14,000; General Electric, $9,000; and tax debt of $8,174 and $1,900 for tax prep. Each party testified that the other was responsible for a portion of their credit card debt. The family court disagreed.

Following the final hearing, the family court issued its Findings of Fact, Conclusions of Law, and Decree of Dissolution. The family court ordered Husband to pay Wife spousal maintenance of $3,300 per month for a period of five years. Husband was awarded the equity in his California condominium, finding that it was acquired from the equity he received in the sale of the Newport, Kentucky property and the loan he took out from his 401K.

The family court awarded each party one vehicle and ordered them to pay the debt associated therewith. Wife was awarded the 2017 Mercedes GLA and Husband was awarded the 2018 Audi Q3. Though Wife had several thousand dollars of equity in the Mercedes that Husband would be entitled to, in return for

getting the total equity in the automobile, Husband was awarded the total possible profit from a children's book he wrote.

Husband was ordered to equally divide his 401K and stock. The family court ordered the parties to execute a Qualified Domestic Relations Order to effectuate said division. The cost of such was divided in proportion to the parties' percentage of income with Husband paying 85% and Wife paying 15%. Each party was ordered to pay the debt incurred in his or her sole name. The family court determined that the outstanding tax debt of $10,074 was marital and ordered it to be paid in proportion to the parties' income, Husband paying 85% and Wife paying $15%.

Finally, Wife incurred $17,784.50 in attorney fees throughout the dissolution proceedings. Considering the significant disparity between the parties' incomes, the family court ordered Husband to pay $15,000 toward Wife's attorney fees. After entry of the Findings of Fact, Conclusions of Law, and Decree of Dissolution, Husband filed a post-judgment motion to alter, amend, or vacate, which the family court denied on December 22, 2022. This appeal followed.

**STANDARD OF REVIEW**

In a dissolution proceeding, division of property consists of a three-step process: (1) the court classifies each piece of property as either marital or nonmarital; (2) the court then assigns each party his or her nonmarital property;

-7-

and (3) finally, the court equitably divides the marital property between the parties. *Smith v. Smith*, 235 S.W.3d 1, 5 (Ky. App. 2006) (footnotes omitted). The determination of whether the property is marital or nonmarital in nature is reviewed in two tiers. *Id.* at 6. We review a family court's factual findings for clear error but review the ultimate determination of the nature of the property *de novo*. *Id.* We review the court's division of marital property and debt for abuse of discretion. *Id.*; *Maclean v. Middleton*, 419 S.W.3d 755, 773 (Ky. App. 2014) (citation omitted).

Awards of maintenance are within the "sound and broad discretion" of the family court. *Naramore v. Naramore*, 611 S.W.3d 281, 286 (Ky. App. 2020) (citation omitted). Where the award is supported by substantial evidence, we will not substitute our judgment for that of the family court. *Bickel v. Bickel*, 95 S.W.3d 925, 928 (Ky. App. 2002) (footnote omitted). We also review a family court's award of attorney fees under KRS[3] 403.220 for abuse of discretion. *Bootes v. Bootes*, 470 S.W.3d 351, 356 (Ky. App. 2015) (citation omitted).

We will not disturb findings of fact which are supported by substantial evidence in the record. *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003) (footnote omitted).

> Regardless of conflicting evidence, the weight of the
> evidence, or the fact that the reviewing court would have

---

[3] Kentucky Revised Statutes.

> reached a contrary finding, due regard shall be given to
> the opportunity of the trial court to judge the credibility
> of the witnesses because judging the credibility of
> witnesses and weighing evidence are tasks within the
> exclusive province of the trial court.

*Id.* (internal quotation marks and footnotes omitted).

## ANALYSIS

On appeal, Husband argues that the family court abused its discretion in awarding Wife maintenance, attorney fees, and only 12% of the marital debt.[4]

First, Husband argues that the family court erred in its application of the maintenance provisions under KRS 403.200 by awarding maintenance to Wife in an amount that exceeded her actual budgetary needs. Appellant Brief at 8. The family court may grant maintenance "only if it finds that the spouse seeking maintenance: . . . [l]acks sufficient property, including marital property apportioned to [her], to provide for [her] reasonable needs; and . . . [i]s unable to support [her]self through appropriate employment[.] KRS 403.200(1). Maintenance will be awarded "in such amounts and for such periods of time as the court deems just," and it is directed to consider

> all relevant factors including:
>
> (a) The financial resources of the party seeking
> maintenance, including marital property apportioned to
> [her], and [her] ability to meet [her] needs independently,
> including the extent to which a provision for support of a

---

[4] *See* footnote 1.

child living with the party includes a sum for that party as custodian;

(b) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

(c) The standard of living established during the marriage;

(d) The duration of the marriage;

(e) The age, and the physical and emotional condition of the spouse seeking maintenance; and

(f) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance.

KRS 403.200(2).

Temporary maintenance may be awarded under KRS 403.160. "The purpose of temporary maintenance is to preserve the status quo between the spouses while the dissolution proceeding is pending." *Atkisson v. Atkisson*, 298 S.W.3d 858, 864 (Ky. App. 2009) (citations omitted). The award of temporary maintenance to Wife of $7,500 per month on May 25, 2021, was based on her budget of $9,180. Husband successfully argued for a reduction in temporary maintenance on March 4, 2022. At that hearing, the temporary maintenance was reduced to $2,500. As a result, Wife reduced her monthly expenses considerably but argued she needed $5,000 per month in maintenance to meet her reasonable needs.

In its Findings of Fact and Conclusions of Law, following the final hearing in June 2022, the family court meticulously examined the evidence considering the KRS 403.200 factors and awarded Wife maintenance based on Wife's lack of financial resources, her age, limited income, the length of the marriage, and the standard of living established during the marriage. These findings reflect the statutory factors, and they are all supported by substantial evidence in the record.

Additionally, the family court found that Husband's reasonable living expenses were $9,677 and his monthly income was $14,579 based on his testimony and evidence presented at the hearing. The family court found that Husband was able to meet his monthly expenses and pay a reasonable amount of maintenance to Wife of $3,300 per month for a period of five years. The family court reasoned that five years was enough time for Wife to relocate to Florida and become self-sufficient. R. at 276. The evidence was sufficient to support the family court's findings and its decision to award Wife maintenance.

Next, Husband argues that the family court abused its discretion in awarding Wife $15,000 in attorney fees. KRS 403.220 authorizes a trial court to order a party to pay a "reasonable amount" of the other party's attorney fees after considering the financial resources of the parties. In *Smith v. McGill*, 556 S.W.3d 552 (Ky. 2018), the Kentucky Supreme Court overruled prior case law requiring

that there be a disparity in the financial resources of the parties in favor of the payor. *Id.* at 556. "While financial disparity is no longer a threshold requirement which must be met in order for a trial court to award attorney's fees, we note that the financial disparity is still a viable factor for trial courts to consider in following the statute and looking at the parties' total financial picture." *Id.* Other factors the family court should consider include the following:

> (a) Amount and character of services rendered.
>
> (b) Labor, time, and trouble involved.
>
> (c) Nature and importance of the litigation or business in which the services were rendered.
>
> (d) Responsibility imposed.
>
> (e) The amount of money or the value of property affected by the controversy, or involved in the employment.
>
> (f) Skill and experience called for in the performance of the services.
>
> (g) The professional character and standing of the attorneys.
>
> (h) The results secured.

*Rumpel v. Rumpel*, 438 S.W.3d 354, 363 (Ky. 2014) (citations omitted). The family court noted, "Pursuant to Exhibit 19, Petitioner is requesting $17,784.50 in attorney's fees. Given the nature of this litigation regarding complexity and longevity, the amount of fees seems reasonable." R. at 276. The

-12-

family court concluded, "There is a large disparity in the income between the parties. Of the total income between the parties, the Petitioner earns 15% of such and the Respondent earns 85% of such. The Court feels that it is reasonable to grant Petitioner's request in part for attorney's fees and orders that the Respondent pay the Petitioner $15,000 in attorney's fees." R. at 277. Husband argues "[i]t is unconscionable to require him to be responsible for $15,000 in attorney fees, when [Wife's] own actions inflated these costs and he struggles to meet his basic needs and debts [sic] payments." Appellant Brief at 14. The family court found Husband's argument was contrary to the evidence.

It is well-established that any award of attorney fees is subject to a determination of reasonableness by the family court. *Capitol Cadillac Olds, Inc. v. Roberts*, 813 S.W.2d 287, 293 (Ky. 1991). Our domestic relations statutes and case law have never required the same level of documentation as required for other awards of attorney fees. But at a minimum, the family court must establish a "lodestar" figure, consisting of the counsel's reasonable hours, multiplied by a reasonable hourly rate. *Meyers v. Chapman Printing Co., Inc.*, 840 S.W.2d 814, 826 (Ky. 1992). Once that determination is made, the family court must determine the reasonableness of those fees using the *Sexton*[5] factors.

---

[5] *Sexton v. Sexton*, 125 S.W.3d 258, 272-73 (Ky. 2004).

Here, the family court reviewed the financial condition of the parties and Wife's counsel's affidavit and billing records, which included the hourly rate for the attorney, her associate, law clerk, and paralegal as well as the number of hours billed, and found them to be reasonable. The family court did not go into a detailed analysis of the records before finding them reasonable. But Husband did not raise the issue of the reasonableness of the fees in his post-judgment motion and does not raise it on appeal. Instead, he argues he should not have to pay any attorney fees. The family court acted within its broad discretion when weighing the evidence and awarding Wife approximately 85 percent of her attorney fees.

Finally, Husband argues that the family court abused its discretion in the allocation of the parties' debt, contending that the family court assigned 88% of the parties' debt to him and 12% of the debt to Wife. Husband erroneously contends that all the debts allocated in the Decree of Dissolution are "marital debts." There is no such finding in the record, nor is there evidence to support such a finding. "Questions of whether property or debt is marital or nonmarital are left to the sound discretion of the trial court[.]" *Rice v Rice*, 336 S.W.3d 66, 68 (Ky. 2011). While KRS 403.190 creates a presumption that property acquired during a marriage is marital, that presumption does not extend to debt. *Id.* "The burden of proving that a debt is marital is upon the party that incurred it and now claims it is marital." *Id.* (citing *Allison v. Allison*, 246 S.W.3d 898 (Ky. App.

-14-

2008)). A debt will be considered marital only if it is "incurred for the benefit of both parties to the marriage." *Gipson v. Gipson*, 702 S.W.2d 54, 55 (Ky. App. 1985).

The family court found that the parties each incurred debts in their names. While both parties testified that they believed the other party should be responsible for the payment of a portion of his or her debt, there was little evidence or testimony provided to suggest that the debt was incurred for the benefit of both spouses. Therefore, the family court made no finding that the debt held in the parties' names was marital, and the court assigned each party the debt held in his or her name.

The only debt the trial court determined to be marital was a tax debt associated with the parties' 2021 income taxes totaling $10,074. Just as there is no presumption that all debt incurred during the marriage is marital, "there is no presumption that debts must be divided equally or in the same proportion as the marital property." *Smith v. Smith*, 235 S.W.3d 1, 15 (Ky. App. 2006). Instead, "debts are generally 'assigned on the basis of such factors as receipt of benefits and extent of participation[.]'" *Id.* (quoting *Neidlinger v. Neidlinger*, 52 S.W.3d 513 (Ky. 2001), *overruled on other grounds by Smith v. McGill*, 556 S.W.3d 552 (Ky. 2018)). The family court ordered that this marital debt be assigned in proportion to

the parties' incomes, with Husband paying 85% and Wife paying 15%. Said order, is well within the family court's discretion.

## CONCLUSION

Based on the foregoing, the Orders of the Campbell County Family Court are affirmed.

ALL CONCUR.

BRIEF FOR APPELLANT:

Tasha K. Schaffner
Jennifer L. Conner
Crestview Hills, Kentucky

BRIEF FOR APPELLEE:

Carrie R. Waide
Matthew J. Worth
Covington, Kentucky