**Carolyn RICE, Appellant,**

v.

**Jackie RICE, Appellee.**

No. 2009–SC–000730–DG.

Supreme Court of Kentucky.

March 24, 2011.

Tracy Denise Frye, Michael Allen Frye, Russell, KY, Counsel for Appellant.

John R. McGinnis, McBrayer, McGinnis, Leslie & Kirkland, Greenup, KY, Counsel for Appellee.

Opinion of the Court by Justice NOBLE.

The single issue on discretionary review to this Court is whether the trial court abused its discretion in concluding that a credit card debt incurred solely by the husband and an adult son without the wife's knowledge and participation was marital property and ordering the wife to be responsible for one-half of that debt. A divided Court of Appeals panel affirmed. Agreeing with the well-reasoned dissent of Court of Appeals Judge Sara Combs, this Court reverses.

## I. Background

Jackie Rice, Appellee, and Carolyn Rice, Appellant, were married on February 22, 1966, and were divorced on March 14, 2008, after forty-two years of marriage. At the time of the divorce, there were no minor children, but one adult child, Darrin,

plays a significant role in the sole issue before the Court. In the divorce decree, the trial court held that credit card debt in the amount of $65,000 was marital, and assigned half the debt to each party.

However, this debt was incurred over a four-year period, primarily by the adult son, Darrin, with the permission and some degree of knowledge of his father, Jackie. Carolyn, on the other hand, did not know of the credit cards' existence, nor that Darrin was being allowed to use the cards. Indeed, some of the cards were obtained by using another family member's name, with Jackie making the payments. Carolyn was kept in the dark about this until Damn's bill collectors started calling her home in Greenup County, Kentucky, about debts he had incurred in Florida.

Jackie testified at trial that he began helping Darrin after his home in Florida was damaged by a hurricane. However, it is notable that he did not, as he admitted, tell Carolyn about this help. In fact, Jackie obtained multiple credit cards for his son and, in his testimony at trial, exhibited a somewhat cavalier attitude about helping Darrin get "a little old credit card" even after Carolyn learned of the large debt and demanded he stop. At some point, Darrin changed the billing address so the statement would come directly to him, but Jackie admitted to continuing to make the payments on the cards and assisting Darrin surreptitiously with other debt such as co-signing for the purchase of a van and making all the payments on it even after it was completely destroyed by fire. Since Darrin had allowed the insurance to lapse, it was a total loss.

Carolyn did not discover the enormity of the debt until she retired from her eight-dollar-an-hour job, and was home to take the debt collectors' calls and check into the paperwork. When Jackie and Darrin per-sisted with additional debt, she filed for divorce.

The trial court determined that the debt was marital, and divided it equally between the parties. The Court of Appeals affirmed, with Judge Combs dissenting. To address the question of the nature of the debt and whether there was an obligation of both parties to pay the debt incurred for an adult child without the knowledge and consent of one of the parties, this Court granted discretionary review.

## II. Analysis

Questions of whether property or debt is marital or nonmarital are left to the sound discretion of the trial court, as is the equitable division of any marital property, and will be reviewed for abuse of discretion, namely, "whether the decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English,* 993 S.W.2d 941 (Ky.1999); *Sexton v. Sexton,* 125 S.W.3d 258 (Ky.2004). KRS 403.190 creates a presumption that property acquired during the marriage is marital property; that presumption is rebuttable by showing a lack of any marital contribution or purpose. *Rearden v. Rearden,* 296 S.W.3d 438 (Ky. App.2009). However, the statute does not create a presumption in regard to debt, though as a practical matter, the assignment of debts acquired during the marriage speaks to whether a debt is marital or nonmarital, and is reviewed for abuse of discretion. *Neidlinger v. Neidlinger,* 52 S.W.3d 513 (Ky.2001); *Bodie v. Bodie,* 590 S.W.2d 895 (Ky.App.1979). The burden of proving that a debt is marital is upon the party that incurred it and now claims it is marital. *Allison v. Allison,* 246 S.W.3d 898 (Ky.App.2008).

The *Neidlinger* case is this Court's latest discussion on the assignment

of debt incurred during the marriage. It establishes a logical analysis as to who has the burden of proving that a debt is marital and what factors should be considered. As the Court of Appeals had established in *Bodie,* the *nature* of a debt must be determined by looking at who participated in the making of the debt, and who received the benefits of the debt. Thus this Court enunciated four factors in *Neidlinger* that give a clear basis for determining the nature of a debt as either marital or nonmarital: (1) Was the debt incurred for the purchase of marital property? (2) Was the debt necessary to maintain and support the family? (3) What was the extent and participation of each party in incurring or benefitting from the debt? and (4) What are the economic circumstances of the parties after divorce to allow for payment of the debt? *Neidlinger,* 52 S.W.3d at 523.

The question presented by this case is whether debt acquired for the benefit of an adult child, without the other parent's knowledge or consent, is nonetheless a marital debt subject to equitable division because of the "implied" benefits a parent receives from helping his or her child. If the answer to this question is yes, then one parent could choose, for example, to acquire debt to send a child to an Ivy League school, even after emancipation, without consent of the other parent, and the debt would be marital. If divorce later occurred, that debt, being marital, would be subject to assignment in whole or in part, depending on the equities, to the protesting parent. Modern disputes are more often of this type rather than the case before the Court, but the analysis is the same. This thinking would expand the concept of "family support" beyond any existing law and beyond the age of emancipation set by the legislature.

In this case, it is uncontroverted that the debt was not incurred for the purchase of marital property, and that Carolyn not only did not participate in making the debt, she was kept completely unaware of it until some years later. It is also clear, based on the award of maintenance to her, that Carolyn does not have personal assets sufficient to provide for her own support, let alone pay off this unknown debt. But the majority at the Court of Appeals appears to have taken an expansive view of the factor of family support and maintenance.

At the time Jackie began giving financial assistance and credit cards, his son Darrin was 38 years old and long emancipated. He was living with a family of his own in Florida. And while natural parental care and sympathy would be aroused by a child at any age having his home damaged by a hurricane and finding himself out of work, there is no *legal* obligation to support emancipated children. Certainly, the parents could make a joint decision to give such a large gift to their son, or even a small gift individually, but it is undisputed that Carolyn did not participate in the gifting decisions in this case. And it may be that Jackie intended only relatively small gifts at the beginning. But much as a gambler loses control over his gambling addiction, Jackie lost control over the expenditures as time went by. To this family of modest means, the sum of $65,000.00 in debt can be staggering, especially when compared to what could be purchased such as automobiles, medical care, and even a significant down payment on a home. Jackie and Carolyn have worked and raised six children, only two of whom were their biological children. As competent adults, the law puts the burden of being self-supporting on the adult children. If in generosity parents choose to help their children beyond the legal age, that is their sound prerogative; it is not an obligation.

Here, the situation is especially egregious because the gift at issue is *debt,* which binds the obligor into the future. As such, it has a totally different character than a consensual gift of property or money that is gone when given. Debt in this case is an encumbrance into the parties' old age. The question should be parsed to ask what a party is *legally obligated* to pay. As one who is not a party to the credit card contract, Carolyn could not be made to pay this debt through normal legal process. On what equitable grounds could a Family Court require her to pay half of it? Without some nexus to the debt other than being married to the person who made the debt, such as knowledge, consent, or receiving a direct benefit from the debt, there is no fairness in saddling Carolyn with this unanticipated debt after divorce, when there is no longer a marital purpose of any kind.

Jackie has not advanced any convincing arguments as to why this debt should be marital. More importantly, it is clear that none of the *Neidlinger* factors apply to support finding the debt to be marital. Thus, the trial court abused its discretion in so finding. Having so found, it naturally follows that the trial court further abused its discretion by assigning any of the debt to Carolyn.

Because none of the *Neidlinger* factors favored assigning to Carolyn a debt that she did not consent to nor receive any benefit from at this late stage in life, the trial court's decision to do so was unreasonable, unfair and unsupported by sound legal principles. Parents should not be required to buy their children's good will, and if they do, they must do so by choice rather than being compelled to it. There is no sound reason to expand longstanding law, which has been set by the legislature, to broaden "family support" to make one parent obligated for debt caused by gifts to an adult child created by the other parent alone.

By the same analysis, no parent is required by law to be the "best" parent. Perhaps the "best" parent would choose to face bankruptcy himself rather than see his child suffer or need something at any age. Or perhaps the "best" parent is one who requires his adult children to live life's lessons as they come, with self-sufficiency. Such a debate is philosophical—or moral or ethical—rather than legal, and is not the province of law when the law has been clearly stated by the legislature and our common law to chart a specific course. Lacking a legal obligation to support a competent adult child, Carolyn may not be made to pay debt incurred for that support without her knowledge, consent and benefit.

### III. Conclusion

For the foregoing reasons, the Court of Appeals is reversed, and this case is remanded to the trial court for proceedings consistent with this opinion.

All sitting. All concur.