RENDERED: APRIL 19, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0372-MR

JULIE TUCKER                                                          APPELLANT

v.

APPEAL FROM BOYD CIRCUIT COURT
HONORABLE GEORGE W. DAVIS, III, JUDGE
ACTION NO. 21-CI-00528

WESLEY TUCKER                                                          APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, CETRULO, AND JONES, JUDGES.

CALDWELL, JUDGE: Julie Tucker appeals from the Boyd Circuit Court's orders

resolving timesharing and debt allocation in a divorce action. We affirm.

## FACTS

In late 2021, Appellee Wesley Tucker ("Wes") filed a petition for

divorce from Appellant Julie Tucker ("Julie"). The parties have two children, born

in 2016 and 2017. Initially the parties had temporary joint legal custody with both

parties having some parenting time with the children. Due to Wes working out of town during the weekdays, his parenting time generally occurred on weekends.

In the fall of 2022, the Boyd Circuit Court entered a decree dissolving the parties' marriage. However, the trial court reserved for later adjudication issues including child custody, timesharing or visitation, child support, and property division. *See generally Putnam v. Fanning*, 495 S.W.2d 175 (Ky. 1973).

Shortly after entry of the *Putnam v. Fanning*-type divorce decree, in October 2022, the parties appeared before a Domestic Relations Commissioner ("DRC") for an evidentiary hearing. They presented evidence relating to custody, timesharing, and property issues.

Each party testified about their current living arrangements and employment. Wes testified he was laid off at that time following a health-related absence. He also testified he generally worked out of town on weekdays. He admitted he was currently living in a camper in his brother's yard. He testified that during his parenting time on weekends, he and the children sometimes stayed in the camper and sometimes stayed at his parents' house.

Julie testified to her concerns about Wes having an equal say in decision-making and equal parenting time. She believed Wes was not well-informed when making medical and other decisions due to failure to research issues. She also believed Wes did not supervise the children sufficiently during his

parenting time and stated the children sometimes had scratches or bruises after spending time with Wes.

The parties also testified about financial matters. They had recently sold the marital residence and agreed to split the proceeds – albeit with some disputes about details. Both parties testified to Wes having recently bought a refrigerator, despite the fact there were two other refrigerators on the premises. And both parties testified that Wes consulted Julie about possibly buying a new refrigerator after the refrigerator in the kitchen stopped working and she told him to do what he wanted to do.

About four months after the evidentiary hearing, the DRC filed her report and recommendations. She recommended the parties have joint legal custody and equal timesharing to the extent practicable. While Wes continued to live in the camper and work out of town, she recommended he continue to have weekend visitation. If he obtained other housing and started working in town, she recommended the parties have equal timesharing on a weekly basis – meaning they take turns having parenting time for a week at a time. As for the refrigerator debt, the DRC recommended that this be allocated equally between the parties. The DRC stated child support would be determined later under statutory guidelines.

Both parties filed exceptions to the DRC's report and recommendations. Julie asserted that Wes had made a unilateral decision to buy

the new refrigerator despite the two other refrigerators in the house and that he controlled all marital funds. She also contended that equal or nearly equal timesharing was not in the children's best interests since Wes had not previously had the children for more than a weekend at a time and he did not, in her view, have suitable housing.

Julie asserted in her exceptions that there was a pending investigation into allegations that one of the children had been sexually assaulted by Wes's neighbor while the children were in Wes's care. She also claimed that Wes allowed the children around this neighbor after the alleged assault despite being informed of the incident. She argued Wes's timesharing should be restricted due to his failure to properly supervise the children while in his care. However, no affidavit or documentation about the investigation or sexual abuse allegations was attached to her exceptions.

The trial court entered an order confirming the DRC's report and adopting the DRC's recommendations. It also entered an order overruling the parties' exceptions.

Julie filed a timely appeal from the trial court's orders regarding the DRC's report and recommendations.[1] The same day that she filed her notice of

---

[1] Julie's notice of appeal also stated that she appealed from the DRC's report and recommendations. But a DRC's report and recommendations have no legal effect unless formally confirmed or adopted by the trial court. *See Pennington v. Marcum*, 266 S.W.3d 759,

appeal, she also filed a motion for emergency relief regarding sexual abuse allegations. She requested the trial court grant her temporary emergency custody of the children and restrict Wes's time with the children to supervised visitation once a week. She also requested that the record be sealed regarding the sexual abuse allegations.

The trial court later entered an agreed order between the parties in which both promised to offer in-sight supervision of the children when in their care. However, there is no order resolving Julie's motion for emergency relief in the record on appeal.

Julie argues in her appellant brief that the trial court's custody and timesharing decision must be reversed due to Wes's unsuitable living arrangements and his neglecting the children in her view. She also asserts this Court must reverse the allocation of the refrigerator debt to her due to Wes unilaterally purchasing the refrigerator despite having other refrigerators in the home. (The adopted report called for allocating the refrigerator debt equally between the parties.) Lastly, Julie argues in her brief that this Court should adopt a bright-line rule that a parent's time with children must be restricted and supervised whenever

---

771 (Ky. 2008) ("The trial commissioner acts only to further judicial economy by assisting the trial court; the commissioner's report is a recommendation and is not binding. It is the trial court itself that makes findings of fact, either by adopting those recommended by the commissioner or by acting anew.").

a parent is being investigated for "uncontroverted allegations of neglect and/or exposure to the risk of harm relating to children being sexually assaulted" until the investigation is complete.

## ANALYSIS

Before we address the custody and timesharing arguments, we address Julie's arguments about the refrigerator debt.

### No Reversible Error in Allocation of Refrigerator Debt

We review the trial court's allocation of the refrigerator debt equally between the parties for abuse of discretion. *Rice v. Rice*, 336 S.W.3d 66, 68 (Ky. 2011) ("Questions of whether property or debt is marital or nonmarital are left to the sound discretion of the trial court, as is the equitable division of any marital property, and will be reviewed for abuse of discretion[.]").

Unlike property acquired during a marriage, there is no presumption that debt acquired during a marriage is marital. *See id. See also* KRS[2] 403.190. In adopting the DRC's recommendation to split the refrigerator debt evenly between the parties, the trial court evidently implicitly concluded that this debt was marital and that it was equitable to divide this debt equally.

The DRC's report adopted by the trial court noted that Julie argued that Wes should be responsible for paying the refrigerator debt since he bought the

---

[2] Kentucky Revised Statutes.

refrigerator. It also noted that Wes requested this debt be paid off from the marital home sale proceeds. The DRC recommended that the parties each pay half of the debt on the refrigerator before receiving their half of the marital home sale proceeds. Or the parties could also elect to have their respective share of the refrigerator debt deducted from marital home sale proceeds prior to their checks for their respective shares of the proceeds being written.

Though not explicitly discussed in the DRC report, both parties testified that Wes consulted Julie before buying the refrigerator and that she told him to do what he wanted to do. So, this is not a case in which a spouse incurred a great deal of debt without the knowledge or consent of the other spouse. *Compare Rice*, 336 S.W.3d at 69. And no one has pointed to any testimony that when consulted by Wes, Julie told him that she opposed buying a new refrigerator. Despite Julie's contention on appeal that she did not see any benefit to buying a new refrigerator, she does not point to any evidence that she expressed this opinion to Wes before the refrigerator purchase.

Furthermore, not only does the evidence support a finding that Julie was aware of, and seemingly consented to, the refrigerator purchase, but the evidence supports a finding that the refrigerator was bought as marital property to be used in the marital home. *Compare id.* (Husband's incurring large debt for benefit of adult child was not to buy marital property.)

-7-

Given these circumstances, we perceive no abuse of discretion in the allocation of half of this debt to Julie – especially as Wes was held responsible for all debt on the camper and both parties shared in the home sale proceeds. In short, there was no abuse of discretion in the trial court allocating half of the refrigerator debt to Julie. Next, we address timesharing issues.

**No Reversible Error in Timesharing Decision**

We review the trial court's custody and timesharing decisions for abuse of discretion. *Jones v. Livesay*, 551 S.W.3d 47, 51 (Ky. App. 2018). We discern no abuse of discretion in these matters based on the evidence in the record.

Citing no authority other than a general reference to KRS Chapter 403, Julie argues in her appellant brief that the trial court erred in failing to find that the presumption for equal timesharing was overcome. She contends this made no sense as, in her view, the trial court found that Wes lacked suitable living arrangements and/or stable housing and was unable to exercise equal timesharing due to generally working out of town.

In adopting the DRC's report, the trial court determined that joint custody was in the child's best interest and found: "There were no allegations that would overcome the presumption of shared parenting." And the court also recognized that totally equal shared parenting was not feasible due to Wes's working out of town most of the week. So long as Wes was working out of town

-8-

and still living in the camper, he would have parenting time mainly on the weekends although a more equal, weekly exchange of parenting time was to take place if his working and living arrangements changed. But the adopted DRC report did not find that Wes lacked stable housing or suitable living arrangements as Julie suggests.

Furthermore, though Wes and the children admittedly stayed in the camper or his parents' house during his parenting time, Julie has not cited any testimony or other evidence of deplorable living conditions in either the camper or Wes's parents' house. And Julie testified to living in her mother's home at the time of the hearing. Julie also testified she suspected Wes did not supervise the children well and she claimed they had bruises or scratches after spending time with him. However, she does not point to any medical evidence or other evidence indicating the nature of how any bruises or scratches were acquired.

Considering the evidence presented at the DRC hearing, we discern no abuse of discretion in the trial court's custody and timesharing decision.

**No Evidence in Record of Sexual Assault Allegations or Investigation**

In addition to her arguments that the timesharing decision must be disturbed due to Wes's allegedly unsuitable living arrangements, Julie argues that the timesharing decision must be disturbed due to an investigation of sexual abuse allegations. As Julie asserts, this argument was preserved by her raising this issue

in her exceptions. *See MV Transp., Inc. v. Allgeier*, 433 S.W.3d 324, 331 (Ky. 2014) ("[T]he critical point in preservation of an issue remains: was the question fairly brought to the attention of the trial court.").

But while Julie raised the issue to the trial court through her exceptions, she does not point to any evidence in the record about sexual abuse allegations or an investigation thereof. Based on our review of the videorecording of the DRC hearing in October 2022, we are unaware of any testimony about allegations of sexual assault during Wes's parenting time. Julie's appellant brief makes no specific citations to the videorecording of the October 2022 DRC hearing and Julie designated only this October 2022 videorecording to be included in the record. So, we could not review the scheduled hearing on exceptions, for example.

Though Julie asserted that an investigation about sexual abuse allegations was ongoing when she filed her exceptions, she does not point to any affidavits, other testimony, or documentary proof in the record. Her exceptions were not evidence as mere allegations in court filings are not evidence. *See T.C. v. M.E.*, 603 S.W.3d 663, 684 (Ky. App. 2020) (allegations in pleadings are not evidence).

Perhaps Julie later presented sealed evidence about a sexual abuse investigation after she filed her notice of appeal and the contemporaneously filed

motion for emergency relief relating to sexual assault allegations. However, there is no evidence in the record before us about any investigation into allegations of sexual abuse. Furthermore, the appellant bears the burden of ensuring that the record is complete with everything the appellate court needs to decide the issues raised on appeal. *Smith v. Smith*, 450 S.W.3d 729, 731 (Ky. App. 2014).

Given the lack of evidence about a sexual assault investigation in the record, we cannot say the trial court abused its discretion in adopting the DRC's recommendation of joint custody and shared parenting time. And given this lack of evidence about whether or when an investigation into sexual assault allegations occurred, we need not reach Julie's argument urging this Court to adopt a bright-line rule requiring restricted or supervised visitation upon uncontroverted allegations of sexual assault of a child while under a parent's care until an investigation is completed. In the absence of any evidence about such an investigation in the record, this would be entertaining a theoretical question and we must not issue advisory opinions even on important issues. *See Philpot v. Patton*, 837 S.W.2d 491, 493 (Ky. 1992) ("Our courts do not function to give advisory opinions, even on important public issues, unless there is an actual case in controversy.").

Furthermore, the interests of children allegedly subjected to sexual assault while in a parent's care are protected under current statutes. *See, e.g.*, KRS

-11-

Chapter 620 (Dependency, Neglect, and Abuse); KRS 403.270 (initial custody determination requiring finding of child's best interest considering several factors including physical and mental health and the child's relationship with parents and others). Notably, a court may modify custody even less than two years after an initial custody determination based on affidavits indicating serious endangerment to the child's physical, mental, or emotional health. KRS 403.340(2)(a). Similarly, a court may restrict visitation based on serious endangerment to the child's physical, mental, or emotional health. *See* KRS 403.320(3).

Thus, we decline to adopt Julie's proposed bright-line rule.

Further arguments in the parties' briefs not discussed herein have been determined to lack merit or relevancy to our resolving this appeal.

## CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

ALL CONCUR.

| BRIEF FOR APPELLANT: | BRIEF FOR APPELLEE: |
|---|---|
| Brandon M. Music | Tracy D. Frye |
| Grayson, Kentucky | Marie E. Troxler |
|  | Russell, Kentucky |