RENDERED: AUGUST 8, 2025; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0513-MR

JAMES LAWRENCE DAVIS　　　　　　　　　　　　　　　APPELLANT


　　　　　　　　　APPEAL FROM KNOX FAMILY COURT
v.　　　　　　　HONORABLE LUCAS M. JOYNER, JUDGE
　　　　　　　　　ACTION NO. 21-CI-00067


ANN MARIE DAVIS　　　　　　　　　　　　　　　　　　APPELLEE


OPINION
AFFIRMING IN PART, REVERSING IN PART,
AND REMANDING

** ** ** ** **

BEFORE: CALDWELL, EASTON, AND L. JONES, JUDGES.

CALDWELL, JUDGE: James Lawrence Davis ("James") claims the Knox Family

Court erred in retroactively awarding child support to Ann Marie Davis ("Ann")

and in denying James' request for a credit for the post-separation mortgage balance

reduction on the marital home before the division of the net remaining marital

home sales proceeds. We affirm the denial of credit for the post-separation

mortgage balance reduction, reverse the retroactive award of child support, and remand for further proceedings in conformity with this Opinion.

**FACTS**

The parties were married in late 2013. They separated in early 2021 or late 2020. They have three children, who ranged in age from three to seven at the time of the April 2024 divorce decree.

Ann filed a petition for divorce in February 2021. James filed a response to the petition. Neither party specifically requested child support in the petition or response, although both generally requested all relief due to them.

In May 2021, the family court issued an order granting the parties temporary joint custody and providing James would have parenting time three weekends per month. The May 2021 order also stated James would have exclusive possession of the marital residence *pendente lite*[1] and was responsible for making mortgage payments on the marital residence. It further stated neither party would pay child support since both had the financial resources to provide for the children while in their care.

On September 2, 2021, James filed a Motion for Child Support with an affidavit and other supporting financial documentation—except for the parties'

---

[1] *Pendente lite* means: "During the proceeding or litigation; in a manner contingent on the outcome of litigation." *Pendente lite*, Black's Law Dictionary (12th ed. 2024).

tax return, which he stated was in Ann's possession. He also filed an amended response to the divorce petition that same day requesting child support.

About a week later, Ann filed a verified response and objection to James' child support motion. In her response Ann stated she was entitled to child support retroactive to the date James filed his child support motion. She noted James only had the children about six days per month and she attached the parties' tax return. However, she did not specifically make a motion or state a specific amount due her for child support.

Although James' child support motion was noticed to be heard on September 10, 2021, the family court passed its determination of child support until the final hearing. The final hearing was continued multiple times and eventually held in late September 2023. The family court never ordered either party to pay temporary child support during the two-year period between James' filing his child support motion and the final hearing.

Ann filed a pretrial memorandum in January 2023 in which she noted James had filed a child support motion and again stated she was entitled to child support retroactive to September 2, 2021. At the beginning of the final hearing held in September 2023, the family court noted child support was one issue to be addressed. Neither James nor Ann objected. A few minutes later, the court specifically noted James had filed a motion for child support among other motions.

During Ann's testimony, her counsel asked if Ann was asking for child support and Ann replied that she was. James did not object.

The family court also conducted a hearing on a motion to compel the sale of the marital residence in December 2023. The family court found James' father made an offer to purchase the marital residence for $331,300.00 with no contingencies. The court further found the parties would benefit from the house being sold to James' father because there would be no realtor commission. So, it ordered the parties to sell the house to James' father[2] and to equally divide the remaining net sales proceeds after paying the mortgage balance and taxes and satisfying any liens.

The family court issued the divorce decree on April 2, 2024. It awarded the parties joint custody with James to continue to have the same parenting time arrangement set forth in the May 2021 temporary order. The court held James was obligated to pay Ann $681.85 per month[3] for child support

---

[2] Although the family court found James' father had offered $331,300.00 for the marital residence on page 17 of divorce decree, the family court ordered the parties to sell the house to James' father for $331,500.00 on page 30 of the divorce decree. We presume this discrepancy is a typographical error. Moreover, neither party has appealed from the family court's order to sell the home to James' father. We suggest the family court and/or parties utilize Kentucky Rules of Civil Procedure ("CR") 60.01 to correct this clerical error.

[3] James states the family court: "correctly determined the child support amount for James to pay Ann and set the amount at $681.85 per month[.]" (Page 2 of Appellant brief.) Clearly, James does not contest the $681.85 monthly child support obligation but only the family court's making the award retroactive to September 2, 2021. Although $681.85 is the monthly child support

-4-

retroactive to September 2, 2021 (the date James filed his motion for child support). The family court further found James had an arrearage of $21,819.20—representing thirty-two (32) months of child support from September 2, 2021, to April 1, 2024. The court ordered James to pay the $21,819.20 arrearage from his share of the marital home sale proceeds. It further ordered that if an arrearage remained after application of sales proceeds, that James must pay an additional $100.00 per month until the arrearage balance was paid in full.

The divorce decree addressed property disposition issues in detail. The family court noted James requested he be awarded $27,764.80 in equity stemming from his post-separation mortgage payments. The court denied the request due to Ann's having to pay twice the monthly mortgage payment amount for rent due to James' receiving exclusive possession of the marital residence.

James filed a timely appeal. He contends the family court erred in not awarding him an offset for the nearly $28,000.00 in reduction of the mortgage balance from his post-separation mortgage payments before the remaining net home sale proceeds were equally divided between the parties. He also argues the

---

obligation which is stated repeatedly in the divorce decree and is not challenged by James, there is an apparent clerical error on page 12 of the divorce decree in which the family court states James shall pay Ann "SIX HUNDRED THIRTY-THREE DOLLARS AND TWENTY-THREE CENTS ($681.85) per month" based on the parties' gross incomes. Again, CR 60.01 may be utilized to correct this clerical error.

family court erred in awarding Ann child support retroactive to September 2, 2021. We address these issues in turn, stating further facts as needed.

## ANALYSIS

### Standard of Review for Property Disposition Issues

KRS[4] 403.190 governs the disposition of property upon divorce. It requires that each spouse be assigned their nonmarital property and that the marital property be equitably divided in "just proportions" without regard to marital misconduct. KRS 403.190(1).

The court allocating the parties' property upon divorce must undertake a three-step process pursuant to KRS 403.190: 1) determining whether each item of property is marital or nonmarital, 2) assigning "each party's nonmarital property to that party" and 3) equitably dividing marital property. *McVicker v. McVicker*, 461 S.W.3d 404, 416-17 (Ky. App. 2015) (citing *Sexton v. Sexton*, 125 S.W.3d 258, 264-65 (Ky. 2004)).

We review the family court's division of marital assets for abuse of discretion, its classification of property as marital or nonmarital *de novo*, and its factual findings for clear error. *McVicker*, 461 S.W.3d at 416.

---

[4] Kentucky Revised Statutes.

**No Reversible Error in Family Court's Denial of James' Request for a Credit for the Post-Separation Mortgage Balance Reduction**

James asserts he made all mortgage payments on the marital residence from April 1, 2021, through September 1, 2023—thus reducing the mortgage balance by $27,764.80. He says he asked the family court to "assign" the amount of the mortgage balance reduction to him before dividing the remaining net sales proceeds equally between the parties.

The family court stated it denied James' request due to Ann's having had to pay rent (in a monthly amount double that of the monthly mortgage payment on the marital home) for a different residence for her and the children due to James' receiving exclusive possession of the marital home during the separation. In doing so, the family court also noted James was awarded exclusive possession of the marital home without a hearing on the reasonableness of his receiving such exclusive possession.[5]

---

[5] The family court noted in the decree that Ann took issue with James' obtaining sole possession of the marital home pursuant to the May 2021 temporary order. The family court's findings on property and debt in the decree also noted James' prior counsel had tendered a temporary order stating James would receive exclusive possession of the marital home—despite indications the family court did not intend to rule on possession of the marital home at "the temporary hearing." (Page 16 of divorce decree.) "The temporary hearing" presumably refers to an April 21, 2021, hearing which the family court refers to in the May 2021 temporary order.

Ann suggests in her brief that the family court judge previously assigned to this case signed the tendered temporary order giving James exclusive possession of the marital home despite previously stating issues about possession of the home would not be considered at the April 21, 2021, hearing. However, Ann did not file a cross-appeal to challenge the family court's resolution of any issues.

James admits the debt on the marital residence was clearly incurred during the marriage. He further asserts that prior to separation, mortgage payments were made from the parties' joint incomes and for their joint benefit. In short, he suggests the debt on the marital residence could reasonably be construed as a marital debt—at least prior to separation. And he admits no controlling authority requires the equal division of marital debts. *See Smith v. Smith*, 235 S.W.3d 1 (Ky. App. 2006):

> It is vital to understand that unlike marital property, there is no presumption that a debt incurred during a marriage is marital or nonmarital in nature. Rather, debts are generally "assigned on the basis of such factors as receipt of benefits and extent of participation[.]" Finally, there is no presumption that debts must be divided equally or in the same proportion as the marital property.

*Id.* at 15 (footnotes omitted).

Unlike the disposition of assets upon divorce which KRS 403.190 addresses, the disposition of debts in divorce proceedings is not explicitly addressed by any Kentucky statute. However, as noted in *Smith*, Kentucky precedent reflects that the treatment of debts in divorce proceedings often depends on factors such as the extent to which each party benefitted from or participated in incurring the debt. *Id.* at 15; *Rice v. Rice*, 336 S.W.3d 66, 68-69 (Ky. 2011).

In James' view, he bore the burden of reducing the mortgage balance after the separation and Ann received the benefit of mortgage reduction through no

-8-

effort of her own. James contends Ann could have afforded to pay half of the post-separation mortgage payments but did not. He argues equity requires he receive an offset of $27,764.80 in its entirety or at least half that amount.

James does not explicitly challenge the accuracy of the family court's factual findings about the parties' property, though. Nor does he clearly challenge the family court's classification of property or debts as being marital or nonmarital. However, his argument that the family court erred in not "assigning" to him the post-separation mortgage balance reduction could perhaps be construed as an argument that this mortgage reduction was a nonmarital asset. *See* KRS 403.190(1) (noting each party's nonmarital property must be assigned while marital assets must be equitably divided). *But see* page 15 of Appellant brief: "To the extent the increase in net equity resulted from the sole efforts of James and not front [sic] the joint efforts of the parties, James should have received an offset for those payments. In essence, the trial court should have addressed this issue as an assignment of marital debt."[6]

To the extent James suggests the post-separation reduction in the marital residence mortgage balance is a nonmarital asset, we discern no error in the

---

[6] At times, James' brief appears to refer to the post-separation reduction in the mortgage balance reduction and the total sum of his post-separation mortgage payments interchangeably although we presume that the amount of the mortgage balance reduction was likely smaller than the total sum of the mortgage payments made during that period. In any event, we discern no reversible error in the family court's denial of his request for a credit for either post-separation mortgage payments or the post-separation mortgage balance reduction.

family court's denial of his request for "assignment" to him of the $27,764.80 in the mortgage balance reduction. Though the parties physically separated at least three years prior to the divorce decree, they did not obtain a decree of legal separation. *See* KRS 403.190(2)(c) (assets acquired after marriage but prior to divorce are marital assets unless subject to a statutory exception such as assets acquired after a decree of legal separation). Moreover, given the broad definition of marital assets in KRS 403.190, we discern no error in the family court's declining to classify the funds used for post-separation mortgage payments or the reduction in the mortgage balance as nonmarital assets to be assigned to James. Nor do we detect any abuse of discretion in the family court's denial of James' request for a credit for the post-separation reduction in the mortgage balance before equal division of the net remaining marital home sale proceeds.

While James may have made all mortgage payments on the marital residence after the parties separated, the family court found James had exclusive possession of the marital residence and denied Ann any access to the marital home—even to retrieve her and the children's clothes—during the separation. It further found Ann paid rent for a residence for her and the children in an amount exceeding the mortgage payment on the marital home. These factual findings are supported by substantial evidence and are thus not clearly erroneous based on our review of the record. *See McVicker*, 461 S.W.3d at 416.

Moreover, given these properly supported factual findings, the family court's decision to equally divide the net remaining marital home sales proceeds without affording James an offset for the post-separation reduction in the marital residence mortgage balance was not arbitrary, unfair, unreasonable, or unsupported by sound legal principles. *See id.* at 420 (quoting *Sexton*, 125 S.W.3d at 272) ("The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles."). In other words, this decision was not an abuse of discretion.

Regardless of the reason for James' obtaining exclusive possession of the marital residence during the separation,[7] we cannot fault the family court for considering the fact of James' exclusive possession of the marital home during the separation in determining whether he should be afforded a credit for the post-separation marital residence mortgage balance reduction. As the family court

---

[7] James suggests the family court was incorrect in stating that he received exclusive possession of the marital home during the separation without a hearing about possession. He notes the May 2021 temporary order stated a hearing was held with the parties present and their respective attorneys' making arguments on pending motions. Perhaps James also implicitly suggests the family court may have improperly held against him the actions of his prior counsel and the prior family court judge in tendering and signing the temporary order stating James would have exclusive possession of the marital home *pendente lite*. However, regardless of whether there was a hearing about possession of the marital home prior to entry of the temporary order, we discern no reversible order in the family court's considering the fact of James' exclusive possession of the marital home during the separation in ruling on his request for a credit for the post-separation mortgage balance reduction. Moreover, we do not view the family court's denial of the credit as a punitive sanction, but simply as a practical decision considering that both parties incurred housing expenses, but James received exclusive possession of the marital home during the parties' separation.

further found based on substantial evidence, James' exclusive possession of the marital home led to Ann's having to obtain alternate lodging for her and the children, which cost considerably more per month than the mortgage payments on the marital residence. Thus, we cannot agree with James that equity requires he be afforded a credit for making monthly mortgage payments during the separation.

In sum, given the family court's wide discretion to equitably divide marital assets and debts, we discern no reversible error in the family court's denial of James' request for an offset of nearly $28,000.00 for the reduction in the mortgage balance from his post-separation mortgage payments on the marital residence before equal division of the net remaining marital home sale proceeds.

Next, we address whether the family court erred in awarding Ann child support retroactive to September 2, 2021—the date James filed his child support motion.

**Standard of Review for Child Support Retroactivity Issue**

We review the family court's resolution of purely legal issues such as questions of statutory interpretation under the non-deferential *de novo* standard. *Artrip v. Noe*, 311 S.W.3d 229, 231 (Ky. 2010). However, we review its child support decision for abuse of discretion, *id*. at 232, assuming the family court heeded statutory requirements for determining child support. *See Plattner v. Plattner*, 228 S.W.3d 577, 579 (Ky. App. 2007) (citing *Van Meter v. Smith*, 14

-12-

S.W.3d 569 (Ky. App. 2000) ("Within statutory parameters, the establishment, modification, and enforcement of child support obligations are left to the sound discretion of the trial court.")).

**The Parties' Arguments about Child Support Retroactivity**

James does not challenge the family court's determination of his $681.85 monthly child support obligation.  However, James argues the family court erred in making the child support award retroactive to September 2, 2021.  He contends the $681.85 monthly child support obligation should have commenced only upon the April 2, 2024, date of the divorce decree.  We agree, though our analysis differs from that of the parties.

James admits a court may properly award child support retroactive to the date of filing a child support motion.  As James points out, KRS 403.160(2)(a)—which concerns motions for temporary child support—provides in pertinent part:  "the ordered child support shall be retroactive to the date of the filing of the motion unless otherwise ordered by the court."

James points out Ann never filed a motion for child support.  He also asserts that neither the motion for child support he filed on September 2, 2021, nor Ann's objection and response filed shortly thereafter fully complied with KRS 403.160(2)'s documentation requirements for motions for temporary child support.  And he points out the family court failed to rule on his September 2021 motion

-13-

within fourteen days—despite the requirement that a court rule on a temporary child support motion within 14 days in KRS 403.160(2)(a).

James also argues neither his motion nor Ann's response and objection fulfill all requirements for a revocation or modification of the May 2021 temporary order, which stated neither party was entitled to child support. *See* KRS 403.160(6)(b). He asserts this interlocutory order would have terminated under KRS 403.160(6)(b) upon entry of the divorce decree. He argues it was wrong to modify or revoke the provisions of the temporary order thirty-two months later without holding a hearing about whether circumstances had changed, citing KRS 403.160(6)(b). He also contends Ann waived any right to modify the temporary order denying child support since she did not assert a change of circumstances or file a motion for modification of temporary child support. Also, he claims the family court improperly acted *sua sponte*[8] in making child support retroactive to September 2, 2021.

In response, Ann points out that at the time of the May 2021 temporary order, neither party had requested child support—so the family court was not ruling on a temporary child support motion at that point. Instead, child

---

[8] *Sua sponte* means: "Without prompting or suggestion; on its own motion[.]" *Sua Sponte*, BLACK'S LAW DICTIONARY (12th ed. 2024). In other words, this means the court is acting on its own volition rather than pursuant to a party's request.

support was first raised as an issue when James filed a motion for child support in September 2021, which he never withdrew. Ann also cites to portions of the final hearing recording in which the family court noted child support was an issue to be addressed and in which Ann clearly stated she was seeking child support with no objections by James.

As Ann points out, her response and objection filed shortly after James' child support motion and her pretrial memorandum filed in January 2023 both contain statements that she was entitled to child support retroactive to September 2, 2021. Therefore, she asserts the family court therefore did not act *sua sponte* in awarding her retroactive child support.

Also, Ann contends that KRS 403.160 does not require that the party who receives child support or retroactive relief must be the party who filed the child support motion. She also suggests that the documents attached to James' motion and to her verified response and objection together satisfied the requirements of KRS 403.160(2). Moreover, she argues in her brief: "It is up to the legislature to revise the statute if the legislature feels that the retroactive relief should only go to the party who filed their affidavit and supporting documents in the form strictly proscribed [sic] by the statute."

**Unlike the Parties, We Do Not View KRS 403.160 As Determinative Here**

While both parties make interesting arguments, our analysis differs from theirs. For example, we perceive the family court resolved only a motion for child support on a more permanent basis rather than a request for temporary child support—despite an isolated allusion to a pending request for temporary child support in the divorce decree.

We note James' child support motion was not styled as a motion for temporary child support and it did not specifically request **temporary** child support. Nor did James insist on an immediate ruling on a temporary child support request based on our review of the record. Instead, he repeatedly consented to and/or requested continuing the hearing on his request for child support until the final hearing—despite KRS 403.160(2)(a)'s 14-day deadline for a court to resolve a motion for temporary child support.

Similarly, Ann did not specifically request temporary child support or demand an immediate hearing on temporary child support. Instead, she simply stated she was entitled to child support in both her response and objection to James' child support motion and in her pretrial memorandum. And while she claimed she was entitled to child support retroactive to the date James filed his motion for child support, the problem remains—at no time did Ann file a formal motion seeking child support.

On page 13 of the divorce decree, the family court stated that a temporary child support request was pending and had not been resolved. Based on our review of the trial recording, however, the family court began the final hearing by orally noting a pending motion for child support, not a pending motion for temporary child support. The family court's statement in the divorce decree that a request for temporary child support was pending is inconsistent with the record before us.

In short, regardless of the parties' arguments about whether requirements for temporary child support motions were met and despite the family court's statement in the decree that temporary child support was at issue, the family court was faced with and ruled upon requests for child support on a more permanent basis. So, we need not necessarily consider whether all temporary child support motion requirements in KRS 403.160 were satisfied.

Instead, we must consider whether the family court's award of child support to Ann retroactive to September 2, 2021, complied with controlling authority about awarding child support on a non-temporary basis. First, we consider James' argument that the family court failed to properly apply the standards for modification of an order about child support in KRS 403.213.

## KRS 403.213 Does Not Clearly Apply Here

In addition to his arguments about KRS 403.160, James' brief also addresses KRS 403.213. KRS 403.213(1) provides in pertinent part: "The provisions of any decree respecting child support may be modified only as to installments accruing subsequent to the filing of the motion for modification and only upon a showing of a material change in circumstances that is substantial and continuing."

James admits the parties did not argue or address the applicability of KRS 403.213 to the family court. Thus, issues about the application of KRS 403.213 were not properly preserved for our review. *See, e.g.*, *Oakley v. Oakley*, 391 S.W.3d 377, 380 (Ky. App. 2012); *MV Transp., Inc. v. Allgeier*, 433 S.W.3d 324, 331 (Ky. 2014). We note Ann's brief does not discuss KRS 403.213.

James points out that Ann did not file a motion to modify the May 2021 temporary order which stated neither party would receive child support. Moreover, James contends the family court improperly modified the temporary order which awarded neither party child support since it made no reference to KRS 403.213 and since it did not expressly find a material, substantial, and continuing change of circumstances.

James argues the family court's failure to cite KRS 403.213 or to make a finding of a qualifying change in circumstances resulted in manifest

injustice, thus requesting review for palpable error. *See Oakley*, 391 S.W.3d at 380 (appellate court must consider "in the case of an unpreserved error, whether palpable error review is being requested and may be granted"); CR 61.02 ("A palpable error which affects the substantial rights of a party may be considered by the court on motion for a new trial or by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error.").

Though we must reverse the family court's awarding Ann child support retroactive to September 2021 on other grounds, we cannot say the family court's failure to *sua sponte* discuss KRS 403.213 or to make a finding of a change in circumstances since the May 2021 temporary order amounted to palpable error resulting in manifest injustice here.

Specifically, we discern no palpable error in the family court's failure to discuss KRS 403.213 or to make the findings required by KRS 403.213 because it is at best unclear whether KRS 403.213(1)'s requirements for modification would apply to a temporary order which neither resolves a request for child support nor awards either party child support. *See McCarty v. Faried*, 499 S.W.3d 266, 267-70, 274 (Ky. 2016) (rejecting argument that KRS 403.213's standards applied when trial court initially established permanent child support in an amount exceeding the temporary child support obligation imposed by temporary order).

KRS 403.213(1)'s requirements expressly apply to modification of "[t]he provisions of any **decree** respecting child support[.]" (Emphasis added.)

While perhaps a decree respecting child support could generally refer to a divorce decree or final judgment or even any order concerning child support,[9] KRS 403.213's requirements for modification do not appear to clearly apply to the May 2021 temporary order in this case. For instance, in another section of KRS Chapter 403 concerning divorce proceedings, a decree refers to a divorce decree. *See* KRS 403.010 (referring to a "decree of dissolution of marriage"). Also, references in KRS 403.240 to "provision of a decree or temporary order" suggest that a temporary order is not the same thing as a decree although parties are obligated to comply with both decrees and temporary orders. Moreover, KRS 403.160(6)(b) states a different standard for modifying a temporary order than KRS 403.213(1)'s standard for modifying child support provisions in decrees. Specifically, KRS 403.160(6)(b) simply states that a temporary order may be

---

[9] We recognize KRS 403.213(1) does not specifically refer to an order or decree awarding child support but simply to "any decree respecting child support." Moreover, the word *decree* can connote different things including a final judgment, a divorce decree, or simply an order. *See Decree*, BLACK'S LAW DICTIONARY (12th ed. 2024) (defining decree as: "**1**. Traditionally, a judicial decision in a court of equity, admiralty, divorce, or probate — similar to a judgment of a court of law <the judge's decree in favor of the will's beneficiary>. **2**. A court's final judgment. **3**. Any court order, but esp. one in a matrimonial cause <divorce decree>.").

modified "before final decree on a showing of the facts necessary to revocation or modification under the circumstances[.]"

In sum, we discern no palpable error in the family court not considering either party's request for permanent child support as a motion for modification of the May 2021 temporary order which stated neither party would receive child support. *Cf. Martin v. Cabinet for Health and Family Services*, 583 S.W.3d 12 (Ky. App. 2019).

In *Martin*, the parties obtained a divorce in the Hardin Family Court. The divorce decree stated neither party would receive child support in accordance with the separation agreement. *Id.* at 14-15. Several months later, the ex-wife asked the Nelson County Attorney's office for assistance with collecting child support from her ex-husband. She also assigned to the Cabinet for Health and Family Services ("CHFS") her right to receive child support. On behalf of CHFS, the Nelson County Attorney filed an action in Nelson Circuit Court against the ex-husband, requesting that child support be awarded pursuant to statutory guidelines. The Nelson Circuit Court conducted a hearing on the action. *Id.* at 15.

The Nelson Circuit Court viewed the matter as an action to establish child support pursuant to KRS 403.211—despite taking note of the divorce decree and its incorporation of the parties' settlement agreement. It concluded the ex-wife

-21-

did not waive any right to child support and ordered the ex-husband to pay a monthly sum of child support. 583 S.W.3d at 16.

Upon the ex-husband's appeal, this Court concluded the circuit court erred in considering the matter as an action to initially establish child support pursuant to KRS 403.211, rather than as action to modify the provisions in the decree about child support governed by KRS 403.213. We construed the divorce decree as establishing a child support obligation of $0.00. 583 S.W.3d at 18. We also noted several problems with the complaint filed by CHFS, including its failure to allege a material change in circumstances that is substantial and continuing—as KRS 403.213(1) requires for modification of decree provisions about child support. *Id.* at 19-20. Moreover, we noted no evidence was presented about any change in circumstances since the decree and the court made no finding of a change in circumstances. Thus, we vacated the Nelson Circuit Court's order awarding a monthly sum of child support with directions to dismiss the complaint without prejudice since it failed to state a claim for modification of child support. *Id*. at 20.

Unlike *Martin*, the family court here did not disturb provisions in a divorce decree about child support. Nor did it disturb a non-temporary order resolving a request by either party for child support when it entered the child support award at issue. *See McCarty*, 499 S.W.3d at 274 (construing order

establishing child support in an amount exceeding the amount of temporary child support as an order initially establishing child support rather than an order to modify an existing child support award pursuant to KRS 403.213). We discern no palpable error in the family court's failure to discuss KRS 403.213 in this case.

However, we nonetheless discern palpable error in the retroactive award of child support for a reason closely related to James' argument that, since Ann filed no motion for child support, child support could not be properly retroactively awarded to her. Specifically, the record clearly shows that, in addition to never filing her own motion for child support, Ann failed to otherwise demand an award of child support prior to trial. It would be patently unfair to allow Ann's response to James' child support motion, where she alleges entitlement to child support from the date of James' motion, to be regarded as more than what it was—a response. Further, to allow James' motion to go unresolved for an extended length of time, regardless of fault for the delay, and then award retroactive support to the party who did not unequivocally demand child support prior to trial would be unconscionable.

### Family Court Committed Palpable Error Resulting in Manifest Injustice by Awarding Ann Child Support Retroactive to a Date Prior to her First Unequivocal Request or Demand for Child Support

James has not challenged his ongoing child support obligation commencing on the date of the divorce decree so we do not disturb the family

court's award of child support commencing on the date of the decree. However, James has clearly contested Ann's having been awarded child support retroactive to the September 2021 date of his filing his motion for child support because Ann did not file her own child support motion. And while Ann stated she was entitled to child support retroactive to the date James filed his child support motion in her response to his motion and in her pretrial memorandum, Ann did not clearly request or demand an award of child support prior to trial. In sum, Ann never made clear that she was seeking an award of child support until she stated she was asking for child support in her trial testimony.

Requests for child support—both temporary and more permanent in nature—are governed by Kentucky statutes including KRS 403.211 and KRS 403.212. *See* KRS 403.211(2) ("At the time of initial establishment of a child support order, whether temporary or permanent, or in any proceeding to modify a support order, the child support guidelines in KRS 403.212 or 403.2122 shall serve as a rebuttable presumption for the establishment or modification of the amount of child support."). Additionally, motions for child support filed in family court must comply with FCRPP[10] 9(4). Both KRS 403.212 and FCRPP 9(4) set forth financial

---

[10] Family Court Rules of Procedure and Practice.

documentation requirements—as KRS 403.160(2) does for temporary child support motions.

Unlike KRS 403.160(2), however, KRS 403.211 (regarding actions to establish or enforce child support) does not specifically state when a child support award may be made retroactively.[11]

Nonetheless, despite the lack of clear statutory guidance about the propriety of retroactive child support under these facts, we construe binding precedent from our Supreme Court as recognizing that non-temporary child support may be awarded retroactive to the date the recipient party filed a motion for child support. *See McCarty*, 499 S.W.3d at 267-70, 274-75 (reinstating court order initially establishing permanent child support—in an amount exceeding the temporary child support awarded—retroactive to the filing of the motion for child support preceding the temporary order).

Our Supreme Court noted in *McCarty* that the trial court had warned that any increases in child support would be made retroactive to the filing of the motion for support in its temporary order and that this was a common practice. And it further explained:

---

[11] KRS 403.213, which James discusses in his brief, does address when a modification of child support may be retroactively ordered. But as we explained earlier, KRS 403.213 did not clearly apply here, and we detect no palpable error in the family court's failure to discuss it.

the order establishing child support was not meant to reimburse specific expenses incurred after the trial court entered the temporary order. Instead, the child support order represented McCarty's culmination of proof and the trial court's judgment as to what amount is reasonable to support Kyra [the child]. While that figure was determined months after McCarty's motion, the trial court ordered that Kyra was entitled to that amount of support from Faried during the interim and going forward. In other words, Kyra's reasonable needs did not manifest the day the final child support order was entered; those needs existed at least as of the date McCarty made a motion for support.

*Id*. at 275.

So, our Supreme Court rejected the argument that awarding child support retroactive to the filing of the motion for child support was an abuse of discretion based on the alleged lack of additional expenses incurred after the temporary order which might result in a lack of need for reimbursement via an arrearage judgment. *Id*. at 274-75. Our Supreme Court noted authority indicating the trial court had discretion to determine the effective date of child support increases, citing *Giacalone v. Giacalone*, 876 S.W.2d 616, 620 (Ky. App. 1994) and *Ullman v. Ullman*, 302 S.W.2d 849, 851 (Ky. 1957).[12] *McCarty*, 499 S.W.3d at 275.

---

[12] We note that *Ullman* was decided with reference to child support statutes which have since been repealed. *See* 302 S.W.2d at 850 (citing former KRS 403.070). Moreover, while *Giacalone* cited *Ullman* for the proposition a court has discretion about the effective date of child support increases, *Giacalone* also states: "KRS 403.213(1) clearly provides that any

But such discretion to select the effective date of an increase in child support or an initial award of child support is not unlimited.

In our view, Kentucky precedent—holding a family court has authority to award child support retroactive to the date the party seeking child support filed his/her motion for child support—simply does not extend to allowing an award of child support retroactive to a date prior to the recipient spouse's filing a motion for child support or otherwise clearly demanding an award of child support. *See McCarty*, 499 S.W.3d at 267, 274-75 (reinstating trial court's award of permanent child support—exceeding the monthly amount of temporary child support awarded—retroactive to the date the **recipient** parent **filed her motion** for child support). *See also Weldon v. Weldon*, 957 S.W.2d 283, 286 (Ky. App. 1997) (affirming award of child support retroactive to the date the recipient parent made an oral motion for temporary child support).[13]

increase shall apply only to installments accruing subsequent to the filing of the motion for modification." 876 S.W.2d at 620. However, our Supreme Court viewed KRS 403.213(1) as not applicable to a trial court's initial award of permanent child support in an amount exceeding the amount established in the temporary child support order. *McCarty*, 499 S.W.3d at 274.

[13] Both parties also cite for our consideration unpublished opinions from Kentucky appellate courts concerning retroactive awards of child support. However, such unpublished Kentucky appellate opinions are not binding authority. Kentucky Rules of Appellate Procedure ("RAP") 40(D)(1); RAP 41(A). Thus, especially since there are published opinions on point, we elect not to discuss the unpublished opinions cited by the parties. *See* RAP 41(A)(3).

Though not clearly articulated by James in his brief, the record on appeal plainly shows that prior to the trial, Ann failed to give James proper notice that she was demanding an award of child support.[14]  Again, Ann did not file a motion for child support with attached documentation required by KRS 403.211. and FCRPP 9(4).  She did not specifically request child support in her divorce petition, and she did not amend her divorce petition to request child support.  Nor did she otherwise clearly request or demand an award of child support prior to trial based on our review of the record.

We recognize that the family court stated on pages 11-12 of the decree that Ann requested child support in her response to James' motion for child support.  But the family court's interpretation of this legal document (Ann's response) is a matter of law which we review *de novo*—meaning without deference.  *See generally Marshall v. Kentucky Farm Bureau Mutual Insurance Company*, 618 S.W.3d 499, 502 (Ky. App. 2020).  We conclude the family court erred in interpreting Ann's response as demanding an award of child support.

Ann's response to James' child support motion simply stated she was entitled to child support, after noting her daycare expenses and the fact James only

---

[14] James apparently concedes he received proper notice of a child support request by Ann either at the final hearing or as of the date of the divorce decree since he does not contest the award of child support as of the date of the decree.

had the children about six days a month. But this response did not express a clear demand for child support. Nor did her pretrial memorandum.

Ann's pretrial memorandum noted James had filed a child support motion and asserted her response to his child support motion indicated she should be awarded child support. Moreover, this memorandum stated Ann had not previously sought child support and indicated that whether Ann sought child support in the future might depend on whether James withdrew his motion for child support:

> Mr. Davis has filed a motion for child support which is unfounded. In the response or answer to this request, Ann stated that she should be awarded child support from Mr. Davis as she has them [the children] the majority of the time with no contribution by Mr. Davis and as such, she should be awarded child support retroactive to the date it was requested, which is September 2, 2021. The child support to Ann should be in the amount of $505.66. Ann pays all the children's daycare costs which is around $1,083.60 per month. Mr. Davis did cover the children on health insurance during the years of 2021 and 2022 but Ann, as of 2023 covers the children in health insurance. Ann has paid all the medical expenses and deductibles for the children during the pendency of this case. **Ann has throughout this proceeding not pursued child support; it is not a priority for her as she has ample [means] to support the children as she has done. However, if Mr. Davis continues to argue that he is entitled to support then she is the party who should be receiving it**.

(Record, p. 1318-19) (emphasis added).

In short, even in her pretrial memorandum, Ann simply suggested she **might** seek child support if James did not drop his request for child support, but she did not clearly and unequivocally demand an award of child support to her. Indeed, Ann conceded in her pretrial memorandum that: "throughout this proceeding [she had] not pursued child support[.]" Since Ann herself stated she had not "pursued" child support prior to trial, the trial court erred when it concluded that she had.

Without a clear demand for an award of child support for Ann, James lacked notice of the need to defend against and obtain quick resolution of the issue of Ann's entitlement to child support to avoid an arrearage. *See Thompson v. Thompson*, 172 S.W.3d 379 (Ky. 2005), in which our Supreme Court noted that installments due under a child support order are "fixed, liquidated debt[s], not subject to retroactive modification" pursuant to controlling statutes and stated: "[b]y their very nature, child support payments are exigent. Such payments cannot be indefinitely postponed while parties litigate." *Id*. at 382.

So, since Ann did not file her own motion for child support or clearly articulate an unequivocal demand for an award of child support in any pleading or other document filed before trial,[15] we cannot allow the family court's award of

---

[15] Though pleadings are construed liberally, they must still provide fair notice of claims and defenses and a demand for the relief the party seeks. *Russell v. Johnson & Johnson, Inc.*, 610

-30-

child support retroactive to the filing of James' child support motion to stand. And although James may not have precisely articulated the same reasoning, Kentucky appellate courts "have a duty to address issues not properly raised when the facts reveal a fundamental basis for a decision not presented by the parties to avoid a misleading application of the law." *Slone v. Calhoun*, 386 S.W.3d 745, 748 (Ky. App. 2012) (citing *Mitchell v. Hadl*, 816 S.W.2d 183 (Ky. 1991)). *See also Priestley v. Priestley*, 949 S.W.2d 594, 596 (Ky. 1997).

Despite any lack of discussion of this issue in the parties' briefs, we are concerned with the implications of a parent being ordered to pay child support retroactive to a time in which the other parent had not yet clearly and unequivocally demanded an award of child support. In our view, where a party has neither filed his/her own motion for child support nor clearly expressed prior to the final hearing or trial an unequivocal demand to be awarded child support, that party cannot be properly awarded child support retroactive to the date the opposing party filed his/her motion for child support. Certainly, Ann made clear during her

S.W.3d 233, 240-41 (Ky. 2020) (citing *e.g.*, CR 8.01(1)). Technically, neither Ann's response to James' child support motion nor her pretrial memorandum are pleadings. *See generally* CR 7.01. Moreover, Ann did not file a motion for child support or amend her divorce petition to specifically request child support. In sum, we do not perceive that any pretrial document filed by Ann gave James clear notice that Ann was demanding an award of child support, regardless of whether James continued to assert or withdrew his motion for child support.

trial testimony that she was asking for child support—but this was the first time she unequivocally requested that she be awarded child support.

Moreover, while James does not dispute Ann's entitlement to the monthly child support obligation from the date of the divorce decree, it is fundamentally unfair to retroactively award child support for a period of nearly three years in which the recipient party made no clear request for child support. Especially where such a retroactive award suddenly results in a large child support arrearage for the payor party which could not have been reasonably anticipated. This amounts to palpable error resulting in manifest injustice. CR 61.02.

We recognize that, in this case, the family court apparently perceived that the payor party would be able to use his share of the proceeds from selling the marital home to satisfy all, most, or at least a significant portion of the over $20,000.00 child support arrearage it determined to exist. (In fact, the family court ordered that James use his share of the proceeds to satisfy the arrearage and then pay $100.00 per month until any remaining arrearage was satisfied.) The exact amount of James' share of the sales proceeds after expenses such as mortgage payoff and taxes is unknown to us, however.

More importantly, many litigants would not have sufficient liquid assets to immediately satisfy a large arrearage. And significant child support arrearages can, at least under certain circumstances, invoke consequences

including potential criminal liability. *See generally* KRS 530.050 (Nonsupport and flagrant nonsupport). In sum, it is imperative to clearly assert a demand for child support so that the issue may be promptly resolved before large arrearages arise. Thus, we decline to set a precedent allowing an award of child support retroactive to a date prior to the recipient party's clearly and unequivocally requesting child support. And we reverse the retroactive award of child support here.

Further arguments raised by the parties but not discussed herein have been determined to lack merit or relevancy to our resolution of this appeal.

**CONCLUSION**

For the foregoing reasons, we **AFFIRM** the denial of James' request for a credit for the post-separation mortgage balance reduction on the marital residence, we **REVERSE** the award of child support retroactive to September 2, 2021 (though we do not disturb the award of child support commencing on the date of the decree), and we **REMAND** the case for further proceedings.

ALL CONCUR.

BRIEF FOR APPELLANT:

Douglas G. Benge
London, Kentucky

BRIEF FOR APPELLEE:

Jennifer S. Nicholson
London, Kentucky